**Manouchehr and Lila M. AZAD, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 18769.**

United States Court of Appeals Eighth Circuit.

Jan. 15, 1968.

olis, Minn., and Stanley H. Green, Asst. U. S. Atty., were on the brief of appellee.

Before VOGEL, Chief Judge, and MATTHES and BLACKMUN, Circuit Judges.

MATTHES, Circuit Judge.

Plaintiffs, appellants herein,[1] instituted this action against the United States for a refund of income taxes paid pursuant to income tax deficiencies assessed by the Commissioner of Internal Revenue for calendar years 1961 and 1962. The district court, Honorable Earl R. Larson, denied their claim for a refund and dismissed the action. Plaintiffs have appealed.

The sole question at issue in the district court was whether Dr. Azad, one of the plaintiffs, was an "employee" of Swedish Hospital of Minneapolis, Minnesota within the meaning of Section 403 of the Internal Revenue Code of 1954.[2]

In addition to its memorandum opinion the district court has filed detailed findings of fact and conclusions of law. See United States v. Azad, 277 F.Supp. 258 (D.Minn.1966). Plaintiffs do not take issue with the accuracy of the court's factual findings. Our review therefore is limited to determining whether on the basis of the undisputed facts the district court was clearly erroneous in concluding that Dr. Azad was not an employee of Swedish Hospital and therefore not entitled to the benefit of the provisions of Section 403(b).

In view of the comprehensive treatment of the facts by the district court we need not engage in a detailed discussion

Lee N. Johnson, of Smith, Johnson & Persian, Minneapolis, Minn., for appellant and filed brief.

Elmer J. Kelsey, Atty., Dept. of Justice, Washington, D. C., for appellee; Mitchell Rogovin, Asst. Atty. Gen., and Meyer Rothwacks, Loring W. Post and Howard M. Koff, Attys., Dept. of Justice, Patrick J. Foley, U. S. Atty., Minneap-

1. Lila M. Azad, wife of Doctor Manouchehr Azad, is a party to this action only because of the filing of joint tax returns for the years in question.

2. Section 403 of the Internal Revenue Code, which governs the taxation of employee annuities, provides in pertinent part:

   "(b) Taxability of beneficiary under annuity purchased by section 501(c) (3) organization or public school.—
   (1) General rule.—If—
   (A) an annuity contract is purchased—
   (i) for an employee by an employer described in section 501(c) (3) which is exempt from tax under section 501 (a),

   \*   \*   \*   \*   \*

   then amounts contributed by such employer for such annuity contract \* \* \* shall be excluded from the gross income of the employee for the taxable year to the extent that the aggregate of such amounts does not exceed the exclusion allowance for such taxable year."

thereof. For our purpose, at this point, it is sufficient to observe that Dr. Azad became a member of the radiology staff of the Swedish Hospital, a qualified tax-exempt charitable organization, on July 1, 1955, where he performed both diagnostic and therapeutic services. The provisions for payment as well as the amount of Dr. Azad's compensation for services performed in the hospital during the years relevant to this action are fully delineated in Judge Larson's findings.

In December, 1960 and in October, 1961, pursuant to applications by the hospital and Dr. Azad, Northwestern Mutual Life Insurance Company issued two annuity contracts providing for Retirement Life Income for Dr. Azad. The hospital paid the premiums on the two contracts for the years in question, but plaintiffs did not include the amounts paid as income on their joint income tax returns.

Appellants' basic contention is that under the undisputed facts and controlling legal principles the court erred in holding that the relationship between the hospital and Dr. Azad was not that of an employer-employee. They argue that the district court gave disproportionate weight to the degree of control which the hospital exercised over Dr. Azad as the single, most important element governing his status. They submit that in cases involving professional employees the degree of control test is of relatively minor importance and should yield to at least two other significant tests which seek to determine (1) the business purpose and objectives of the employer and (2) the extent of personal financial commitment by Dr. Azad.

The government takes issue with plaintiffs' position and asserts that the record fully warrants the court's conclusion that

Dr. Azad was not an employee within the meaning of Section 403(b) of the 1954 Internal Revenue Code.

The parties are in agreement that common law principles are to be applied in determining whether an individual is an employee or an independent contractor. Judge Larson was of the same view and accordingly applied the common law test.

■ The determination of an individual's status as an employee or an independent contractor has been the subject of numerous decisions. It is settled that each case must stand on its own facts, in light of all the existing circumstances, and that no one facet of the relationship is generally determinative. Several of the criteria indicative of the status of an independent contractor were recognized and discussed at some length by Chief Judge Vogel in Saiki v. United States, 306 F.2d 642 (8th Cir. 1962).[3] The authorities seem to be in general agreement that an employer's right to control the manner in which the work is performed is an important if not the master test to be considered in determining the existence of an employer-employee relationship. See, in addition to Saiki, Lifetime Siding, Inc. v. United States, 359 F.2d 657, 660 (2d Cir. 1966); McGuire v. United States, 349 F.2d 644, 646 (9th Cir. 1965); Shapiro v. Ribicoff, 316 F.2d 262, 263 (2d Cir. 1963); Alsco Storm Windows, Inc. v. United States, 311 F.2d 341, 342–343 (9th Cir. 1962); Radio City Music Hall Corp. v. United States, 135 F.2d 715, 717–718 (2d Cir. 1943); 27 Am.Jur. Independent Contractors § 6 (1940); Restatement (Second), Agency § 220 (1958).

Plaintiffs argue that the control over professional persons must necessarily be more tenuous and limited than the con-

**3.** In *Saiki* Judge Vogel took note of a regulation promulgated under the Social Security Act. See 26 C.F.R. § 31.3121 (d)–1(c) (2). Plaintiffs have implicitly recognized this regulation as well as other cases involving the Federal Insurance Contributions Act as applicable here. This regulation provides in part:
"Generally such relationship [employer-employee] exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished."

trol over nonprofessional employees. This position undoubtedly has appealing logic as well as some basis in law. See Cody v. Ribicoff, 289 F.2d 394 (8th Cir. 1961), involving social security benefits, where we stated:

"Important here is the rule that the element of control is subject to special considerations if the employment of professional persons is involved." 289 F.2d at 398.

See also Flemming v. Huycke, 284 F.2d 546, 550 (9th Cir. 1960); Wendell E. James, 25 T.C. 1296, 1301 (1956).

From the very nature of the services rendered by physicians and other professionals, it would be wholly unrealistic to suggest that an employer should undertake the task of controlling the manner in which the professional conducts his activities. That Judge Larson was cognizant of this rule is demonstrated by this statement:

" * * * His [the salaried professional's] immediate superiors may be managers, officers, trustees or directors who may not be professionals and cannot pretend to know the details of the work and perhaps cannot measure the result.

\*   \*   \*   \*   \*   \*

"Perhaps the right to control the details or means by which the result is to be accomplished is a test which can be over-emphasized where the relationship affects professional persons. Even the trained and skilled hospital superintendent is unable to do this. Here, as plaintiff admitted, the Hospital could not control or supervise his work. Assuming that as to professionals the test is not proper, the Court's findings indicate that the employer-employee relationship did not otherwise exist." 277 F.Supp. at 265.

We readily agree with plaintiffs that certain facets of the working arrangement lend support to their position that Dr. Azad was an employee. Thus, the hospital furnished all of the equipment for its radiology department. In addition, under an unsigned "memorandum agreement" with the hospital, Dr. Azad was required to devote as much of his time and attention to the radiology department as was necessary to adequately serve the best interests and welfare of patients at the hospital.[4] That agreement, moreover, fixed the amount of vacation time as well as the rate of compensation for each of the doctors in the radiology department. The Doctor's right to work in the hospital was subject to annual review by the hospital which could terminate his services if they proved unsatisfactory. Other indicia of an employee status can be gleaned from the duration and permanency of the relationship as well as from the fact that the fees to be charged by Dr. Azad and his associates were both fixed and collected by the hospital.

But the foregoing favorable circumstances are more than offset by other factors which negative the existence of an employer-employee relationship. Dr. Azad was not restricted to the performance of services solely for the Swedish Hospital. He was permitted to and in fact rendered services at other hospitals. His income from these sources amounted to approximately $5,000.00 and $6,000.00 in 1961 and 1962, respectively. Plaintiff testified unequivocally that neither the hospital nor Dr. Idstrom, head of the radiology department, exercised any supervision over the professional performance of his work. Plaintiff, moreover, was not required to work certain hours, nor account for any absence from work. In addition, none of the radiologists were required to comply with any set policies, rules or regulations of the hospital, except insofar as they applied to all members of the medical staff.

Of particular significance is the fact that neither the hospital nor Dr. Azad himself explicitly regarded each other as within the ambit of an employer-employee relationship. The hospital stoutly maintained that the members of the radi-

---

4. Dr. Azad testified that he never consented to this memorandum. There is evidence in the record, however, to support a contrary inference.

ology staff were not employees of the hospital; nor is there any evidence that Dr. Azad considered himself within that status prior to the present controversy. On the contrary, the actions of both the hospital and plaintiff himself refute the existence of that status. The hospital did not withhold social security or federal income taxes from the compensation paid to Dr. Azad. The hospital's insurance did not include malpractice coverage for any of the radiologists, who purchased their own insurance as a group. Fringe benefits which normally accrued to non-professional employees of the hospital, including those in the radiology department, were not provided to Dr. Azad and his associates. Moreover, in his 1961 and 1962 income tax returns plaintiff did not include his income from the Swedish Hospital as wages or salaries, but as professional income, the tax on which was paid in part pursuant to a declaration of estimated tax.

Other aspects of the working relationship between Dr. Azad and Swedish Hospital are fully articulated in Judge Larson's findings of fact. These undisputed facts are readily susceptible of conflicting inferences under traditional common law tests. The arrangement has elements traditionally characteristic of both an employee and independent contractor status. Considered realistically, however, the majority of the circumstances or factors present preponderate in favor of an independent contractor status. Viewed in totality we are not persuaded to hold that Judge Larson's findings are clearly erroneous within the teachings of the Supreme Court in Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). Neither are we convinced that Judge Larson failed to apply the proper standards in reaching his decision.

We have carefully examined the decision of the Tax Court in Vincent M. Ravel, 26 T.C.M. 885 (September 13, 1967), filed subsequent to the submission of this case. The working agreement between Dr. Ravel and the El Paso General Hospital is readily distinguishable from the present case and supports the Tax Court's finding that the petitioner there was an employee of the hospital. The Tax Court in *Ravel*, moreover, was aware of the district court's decision in this case, and properly recognized the distinguishing factual features. Vincent M. Ravel, supra, n. 4.

The judgment is affirmed.