**AMERICAN CONSULTING CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. Nos. 67–532, 68–993.**

United States District Court,
W. D. Pennsylvania.

April 15, 1970.

Morris, Safier & Teitelbaum, Pittsburgh, Pa., for plaintiff.

W. Wendell Stanton, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

GOURLEY, Senior District Judge.

These are two consolidated civil actions in which plaintiff seeeks to recover certain sums of money paid to and seized by the Internal Revenue Service as social security taxes for twenty steel consultants working abroad in foreign steel mills but under contract with plaintiff. In one of the civil actions, the government has counterclaimed for additionally assessed taxes. This Court has jurisdiction pursuant to Title 28 U.S.C. § 1346(a) (1). A non-jury trial has been conducted, and counsel for the respective parties have filed their proposed findings of fact and conclusions of law. The Court has reviewed the entire proceedings and is of the opinion that plaintiff should prevail.

The facts of the case are these. On April 2, 1965, the Internal Revenue Service assessed a tax deficiency against plaintiff in the amount of $14,771.80 for unpaid social security taxes allegedly owing the government for the period of January 1, 1961 through December 31, 1962 as a result of the relationship between plaintiff and the aforementioned twenty steel consultants. On June 25, 1965, the Internal Revenue Service assessed a similar tax deficiency in the amount of $9,610.76 plus assessed interest of $1,229.38 for the period from January 1, 1963 through December 31, 1963. On August 12, 1966, the Internal Revenue Service assessed a further tax deficiency of $6,906.71 plus assessed interest of $890.10 for the period from January 1, 1964 through December 31, 1964.

On December 31, 1966, plaintiff paid $348.00 to the Internal Revenue Service as a first quarter social security withholding tax payment for consultant Keenan. Plaintiff then filed a claim for refund for said amount with the Internal Revenue Service, and said claim was disallowed on April 17, 1967. A suit was then filed for said amount on April 27, 1967. After the suit was filed, the Internal Revenue Service seized a bank account belonging to plaintiff and containing the sum of $8,224.46. On March 10, 1967, the Internal Revenue Service applied the amount seized to plaintiff's claimed outstanding liability for unpaid social security taxes for the period January 1, 1961 through December 31, 1962. Defendant then counterclaimed for the remaining outstanding balance of the assessment for the period January 1, 1961 through December 31, 1964. Plaintiff then filed, on April 25, 1968, a claim for refund for the amount seized. This claim was rejected on October 9, 1968. Plaintiff then filed a second suit on August 26, 1968 for the amount seized. This second suit was then consolidated with the prior suit by order of the Court.

Plaintiff is a corporation organized under the laws of Pennsylvania and at all relevant times has been engaged in the business of arranging for American steel consultants to work in and assist in the development of foreign steel mills, most of which appear to have been under foreign management. In most if not all instances, plaintiff, through its president, Mr. Coletti, negotiated contracts with various foreign steel companies to

provide a given number of consultants for a given period of time and then negotiated separate contracts with the steel consultants. Under a given contract with a given foreign steel company, plaintiff periodically received lump sum payments from which he drew a fee and paid the balance in salary and expense money to the steel consultants whom he arranged to work abroad.

By virtue of the arrangements made by Mr. Coletti, American steel consultants primarily assisted in the development of steel plants in Australia, India, Japan, and Sweden. In the various contracts between plaintiff and the steel consultants, there were provisions which obligated plaintiff to pay the consultants' moving expenses, expenses of transportation of technical materials, expenses of travel between the United States and foreign countries and in certain instances, plaintiff was required to provide the consultants with housing while overseas. Under the contracts, plaintiff had the right, exercised on occasion, to assign a particular consultant to a given foreign steel plant, to transfer the consultant to another plant in another country, and to terminate the contract and dismiss the consultant if the conduct of the consultant or his family was detrimental to the reputation of the plaintiff or if the consultant proved incompetent and unable to perform his duties to the satisfaction of the plaintiff or the steel plant to which he was assigned.

These consultants brought professional skills of a technical nature to the foreign steel plants. In many instances the consultants were subjected to requirements of foreign management and the governments of the foreign countries in which they served. It was acknowledged by Mr. Coletti, President of plaintiff, that many of the consultants had more professional expertise than he and that this expertise rendered the consultants quite independent of not only plaintiff but also, in given instances, the foreign managements served.

Mr. Coll, for example, a roller receiving pension from the United States Steel Company, contracted with plaintiff to assist in steel mills in Sweden and India. During the eighteen months which Mr. Coll served in the Swedish mill and the year which he served in the Indian mill, Mr. Coll exercised his own professional judgment in the exercise of his duties. He received a paid vacation upon request from the management of the Swedish mill. Mr. Coll also testified that while Mr. Coletti, acting for plaintiff, had the contractual right to terminate Mr. Coll's contract, he would not have done so as long as the services of Mr. Coll remained satisfactory to the foreign management which he served. Only on occasion did Mr. Coletti, acting for plaintiff, travel to the foreign mills and on such an occasion, Mr. Coletti did not supervise Mr. Coll. Mr. Coletti handled financial arrangements for Mr. Coll to the extent of placing a certain amount of Mr. Coll's salary in a bank in the United States and a certain amount in a bank in the particular foreign country in which Mr. Coll was working.

This tripartite arrangement between Mr. Coletti, acting for plaintiff, steel consultant Coll and the given foreign company for which Mr. Coll worked at a given time, was exemplary of the arrangements between plaintiff, the other steel consultants, and the foreign companies for which the consultants worked.

In this civil suit for refund of social security taxes paid to and seized by the Government, plaintiff asserts that Mr. Coll and the nineteen other steel consultants having a similar relationship with plaintiff were not "employees" within the meaning of Title 42 U.S.C. § 410 but rather were independent contractors for whom plaintiff had no obligation to pay social security taxes. Section 410, a definitional provision, states in relevant part:

"§ 410. * * *

(a) The term 'employment' means * * * any service, of whatever nature, performed after 1950 * * *

(B) outside the United States by a citizen of the United States as an employee (i) of an American employer (as defined in subsection (e) of this section * * *

*   *   *   *   *   *

(e) The term 'American employer' means an employer which is * * * (6) a corporation organized under the laws of the United States of or any State."

Counsel for neither party have contended that the steel consultants fall within particular statutory classifications of "employees" and, accordingly, common law principles must be applied to determine whether employer-employee or independent contractor relationships existed. Instructive in this regard is 20 C.F.R. § 404.1004(c) which provides as follows:

"(c) Common-law employees. (1) Every individual is an employee if under the usual common-law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee.

(2) *Generally, such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished; that is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so.* The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee under the usual common-law rules. Individuals such as physicians, lawyers, dentists, veterinarians, construction contractors, public stenographers and auctioneers, engaged in the pursuit of an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees." (Emphasis supplied.)

It is clear upon the facts aforementioned that the twenty steel consultants in question were subject to little control by plaintiff over the details, means, or manner of their performance in the foreign steel mills. The record indicates that the steel consultants themselves and not Mr. Coletti of plaintiff possessed the expertise desired by the management of the foreign mills, that the day to day duties of the steel consultants consisted of using their own expertise and judgment, and that decisions as to the working hours, leaves or vacations and continued services of the steel consultants in the foreign mills were made, in fact, by the managements of the foreign mills. Nor did the contracts between plaintiff and the steel consultants in question confer any right of control upon plaintiff of sufficient substance to find that an employer-employee rather than independent contractor relationship existed.

It is argued by the Government that, as a matter of law, the factor of control is not of the same importance in determining the employment status of a professionally skilled individual as in determining the status of one not so skilled. Nevertheless, even if the control test has limited applicability to professionals, the Court finds no other significant indicia

of an employer-employee relationship between plaintiff and the steel consultants working abroad. See Azad v. United States, 388 F.2d 74 (8th Cir. 1968). If the steel consultants had any immediate superiors, they were the managements of the foreign mills and not the plaintiff. See Cody v. Ribicoff, 289 F.2d 394 (8th Cir. 1961). Nor did plaintiff have an unexercised contractual right of authority over the steel consultants which would suggest that the steel consultants, during their service abroad, were anything but independent contractors in relationship to plaintiff.

The Court adopts as Findings of Fact and Conclusions of Law all matters set forth in this Opinion consistent with the provisions of Rule 52 of the Federal Rules of Civil Procedure.

The Court enters the following additional Findings of Fact:

1. American Consulting Corporation did not have the right to control or direct the means and details by which the steel consultants, namely John Kois, Frank Hardman, Joseph Keenan, Harry W. Lonkowske, James Cassini, William Stamper, Herman Lang, Thomas Lankes, Howard Milliron, Clyde Call, William C. Bray, Robert Lee Page, Lawrence Hawkins, Elmer Marks, Maurice Diamond, Harry Smith, Clarence Doland, George Altmeyer, Angelo Inverso and Raymond Miller performed their services in the foreign steel mills.

2. American Consulting Corporation did not supply the tools or materials with which the consultants performed their services.

3. American Consulting Corporation did not set the hours during which the consultants were to perform their services at the foreign steel mills.

4. The services performed by the consultants were not performed on the premises of American Consulting Corporation.

5. American Consulting Corporation did not have the right to terminate the services of the consultants before they completed their work at the foreign steel mills.

6. The consultants were to, and did, perform their services under the direction and supervision of plant superintendents in the foreign steel mills.

7. While the consultants were in foreign countries, they were free to engage in whatever other activities they desired when not performing services for a given foreign steel mill.

8. Under contract, the consultants were to be paid for their services on a lump sum basis, but said lump sum, in practice, was paid in monthly installments at the consultant's request.

9. There was no continual relationship existing between the consultants and American Consulting Corporation.

10. The consultants were required to take care of most, if not all, incidental expenses incurred by them while performing their services at a given foreign steel mill.

11. When the consultants entered into consulting agreements with the American Consulting Corporation, it was intended that they would utilize their expertise in instructing native personnel in the operation of a steel mill.

12. American Consulting Corporation did not supply the place of work at which the consultants performed their services.

13. American Consulting Corporation did not train or otherwise instruct the consultants as to how to perform their duties.

14. Plaintiff did not exercise control over the day to day duties of their consultants.

15. Plaintiff did not dictate or suggest to the consultants how, when, or where they were to perform their day to day duties.

16. Plaintiff did not maintain a continuing relationship of any kind whatsoever with the consultants, insofar as their day to day work was concerned.

17. Plaintiff did not set or in any way control the working hours of the consultants.

18. The consultants were not required to perform services, as representatives of the plaintiff, on a full time basis, while they were acting in an advisory capacity at the various foreign steel mills.

19. The consultants under contract to the plaintiff, each and every one of them, were independent consultants and not employees within the purview of the Federal Insurance Contributions Act (FICA).

20. All of the consultants hired by the plaintiff during the period in question were professionally skilled people.

The Court enters the following additional Conclusions of Law:

1. The twenty consultants in question each were independent contractors and not employees of the American Consulting Corporation within the purview of the Federal Insurance Contributions Act.

2. Because the consultants were independent contractors and not employees, American Consulting Corporation was not required to withhold F.I.C.A. taxes from the salary payments made to the consultants.

3. The Internal Revenue Service wrongfully assessed liability against the American Consulting Corporation for F.I.C.A. taxes on monies paid to the consultants during the period from January 1, 1961 up to and including December 31, 1964.

4. The Internal Revenue Service wrongfully levied on the funds of American Consulting Corporation on deposit at the Pittsburgh National Bank.

5. The Internal Revenue Service wrongfully disallowed the claim of American Consulting Corporation filed on or about April 15, 1968 for refund in the amount of $8,224.46.

6. The Internal Revenue Service should remit to the American Consulting Corporation the sum of $8,224.46, together with interest at the rate of 6% from February 6, 1967.

7. The Internal Revenue Service wrongfully disallowed the claim for refund in the amount of $348.00 filed by plaintiff.

8. The Internal Revenue Service should remit to the American Consulting Corporation the sum of $348.00, together with interest at the rate of 6% from April 17, 1967.

In essence, plaintiff was a finder or employment agent who brought together American steel consultants seeking work abroad and the managements of foreign mills seeking their technical assistance. Once having made such arrangements, plaintiff's remaining service was to facilitate the transfer of the steel consultants abroad and to smooth their working relationship there. But, not being their employer, plaintiff had no obligation to pay social security taxes on their behalf.

An appropriate Order is entered in accordance with the foregoing Opinion.