JOSEPH WILLIAM HERMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Herman v. Commissioner
Docket No. 14136-83.
United States Tax Court
T.C. Memo 1986-590; 1986 Tax Ct. Memo LEXIS 16; 52 T.C.M. (CCH) 1194; T.C.M. (RIA) 86590; 7 Employee Benefits Cas. (BNA) 2762; December 18, 1986. Joseph William Herman, pro se. Jonathan J. Ono, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined Federal income tax deficiencies against petitioner as follows: Tax Year
Ended
Deficiency
December 31, 1979
$901
December 31, 1980
5,938
After concessions, *18 the sole issue remaining for decision is whether petitioner is entitled to a deduction under section 404(a)(8)[1] for a contribution to a self-employed individual retirement plan (a so-called Keogh plan) for the 1980 tax year. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Reno, Nevada, at the time the petition was filed herein. A joint Federal income tax return was filed by petitioner and his wife, Emma T. Herman for 1980. [2]
Petitioner is a consulting engineer. During 1980, he was under contract with two entities, ARC Technical Services, Inc. (ARC) and Stubbs Overbeck and Associates, Inc. (Stubbs), each of which is in the business of supplying temporary personnel to their clients. *19 Petitioner entered into an agreement with ARC whereby he was assigned to work at Thiokol Corporation (Thiokol) in Brigham City, Utah, commencing on March 10, 1980. He worked for Thiokol from that date until October of the same year. At Thiokol, petitioner occupied a managerial position. He was assigned five engineers who had been hired by Thiokol, furnished with an office, and provided with most of the engineering equipment he needed. He was also required to report to a supervisor, whom he met with on a daily basis and from whom he received his work assignments. Petitioner was assigned by Stubbs to work for McDermott Engineering (McDermott), in Houston, Texas, on November 10, 1980. There he was directed to work on a project involving water and oil distribution pumping, as well as a project involving construction of an office complex. Petitioner entered into compensation agreements with ARC and Stubbs for the work performed at Thiokol and McDermott. In each instance he was compensated at an hourly rate: $19 per hour from ARC and $25 per hour from Stubbs. Petitioner also received a living allowance of $12 per day and a travel allowance of $83 from ARC, and a similar travel *20 allowance (consisting of air fare from Reno to Houston) as a result of the agreement with Stubbs. The agreement with ARC additionally provided for holidays and vacations, and required petitioner to submit weekly reports of the time he worked. The Stubbs agreement contained similar provisions as to vacations and holidays, as well as a provision prohibiting petitioner from accepting employment with McDermott within 30 days following the termination of the agreement with Stubbs, and a provision authorizing Stubbs to become the property owner of any discoveries or inventions relating to work performed by petitioner at McDermott during the employment term. Petitioner was required to be at Thiokol and McDermott during their designated work hours. Petitioner filed an Employee's Withholding Allowance Certificate (Form W-4) claiming three allowances on March 4, 1980. On May 5, 1980, petitioner obtained an employer identification number from the Internal Revenue Service and established Model Engineering and Construction, Inc. (Model Engineering). On that same date he filed an amended withholding certificate claiming exemption from withholding. All of petitioner's wage income for 1980 *21 came from either ARC or Stubbs. Petitioner filed two Wage and Tax Statements (Forms W-2) with his 1980 Individual Income Tax Return (Form 1040). One named ARC as his employer with wages of $33,805.75, Federal income tax withheld of $1,969.78, and Federal Insurance Contributions Act (FICA) tax withheld of $1,587.67. The other named Stubbs as his employer with wages of $8,075 and FICA tax withheld of $495. No Federal income tax was withheld from the wages from Stubbs. For the year in issue, petitioner did not pay any FICA tax, other than the amounts withheld by ARC and Stubbs, nor did he pay any self-employment tax. On his 1980 income tax return, petitioner claimed an adjustment to income in the amount of $7,377 for "Payments to a Keogh (H.R. 10) retirement plan." On Schedule C, entitled "Profit or (Loss) From Business or Profession," attached to the return, petitioner did not report any income for Model Engineering, nor did he claim a deduction in this schedule for a contribution to a retirement plan. Respondent disallowed the claimed Keogh payment in its entirety. OPINION The issue for decision is whether petitioner is entitled to a deduction for a contribution to a Keogh *22 plan under section 404(a)(8). [3]
Section 404(a)(8) provides that certain contributions by self-employed individuals to qualified retirement plans are deductible. [4] The requirements for plan qualification are set out in detail in section 401, with the general rule being that a qualified plan must be established by an employer for the exclusive benefit of his employees. Sec. 401(a). To bring self-employed plans within this framework, section 401(c) provides that certain self-employed individuals are treated as "employees." For this purpose, the term "employee" includes any individual who has "earned income" for the taxable year. *23 "Earned income" is defined as "the net earnings from self-employment (as defined in section 1402(a))." Sec. 401(c)(2). Section 1402(a) in turn defines "net earnings from self-employment" as the gross income derived by an individual from any trade or business less the deductions attributable thereto. Section 1402(c)(2) provides, however, that the performance of services as an employee does not constitute a trade or business for purposes of self-employment income except in certain situations not applicable in the instant case.See also sec. 1.401-10(b)(3)(i), Income Tax Regs. (the term "employee" for purposes of section 401 does not include a self-employed individual who is a common-law employee). The record indicates that petitioner's primary sources of income during 1980 were the contract firms (i.e., ARC and *24 Stubbs). It does not reflect that he had employment income from any other source. The qualification of petitioner's plan accordingly hinges on whether petitioner's arrangement with the contract firms and engineering firms (i.e., Thiokol and McDermott) rose to the level of self-employment or whether petitioner was a common-law employee of these entities during the year in issue. Should we find, as petitioner argues, that petitioner was self-employed, then the contributions to the retirement plan are deductible. If, on the other hand, we find persuasive respondent's argument that petitioner was an employee, then all contributions to the plan are nondeductible. The determination of whether an individual is an employee within the context of section 401(c) rests on the application of common-law concepts. Cf. Simpson v. Commissioner,64 T.C. 974, 984 (1975); Packard v. Commissioner,63 T.C. 621, 629 (1975). Whether an employer-employee relationship exists is a question of fact. Air Terminal Cab, Inc. v. United States,478 F.2d 575, 578 (8th Cir. 1973), *25 cert. denied 414 U.S. 909 (1973); Burnetta v. Commissioner,68 T.C. 387, 397 (1977); Simpson v. Commissioner,supra at 984. See sec. 1.1402(c)-1, Income Tax Regs.[5] The burden of proof on this issue rests with petitioner. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). See Ellison v. Commissioner,55 T.C. 142, 152 (1970). This Court has relied on seven factors in determining the substance of an employment relationship: (1) The degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used in the work; (3) the opportunity of the individual for profit or loss; (4) whether or not the principal has the right to discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believe they are creating. Simpson v. Commissioner,supra at 984-985; *26 sec. 31.3121(d)-1(c)(2), Employment Tax Regs.; Illinois Tri-Seal Products, Inc. v. United States,353 F.2d 216, 228 (Ct. Cl. 1965); 1 Restatement of Agency 2d sec. 220 (1958). See United States v. Silk,331 U.S. 704, 716 (1947). In assessing these factors, no one factor is controlling; rather, the result is governed by the entire situation and the special facts and circumstances of each case. Simpson v. Commissioner,supra at 985; Sec. 31.3121(d)-1(c)(3), Employment Tax Regs.; Cape Shore Fish Co. v. United States,330 F.2d 961, 965 (Ct. Cl. 1964). See United States v. Silk,supra at 716. The following application of these factors to the instant case shows that petitioner has failed to establish that he was self-employed during 1980. In reaching this result, it is not necessary to decide whether petitioner was an employee of the contract firms (ARC and Stubbs) or an employee of the engineering firms (Thiokol and McDermott). For our purposes we need only determine that petitioner's status was one of an employee, not of *27 a self-employed individual. (1) Degree of Control.
The degree of control necessary for a finding of employee status varies with the nature of the services performed by the worker. A finding of an employer-employee relationship may result even where the inherent nature of the job mandates a lesser degree of control exercised by the one benefiting from the service rendered. See James v. Commissioner,25 T.C. 1296, 1301 (1956). For example, the threshold level of control necessary for a finding of employee status is generally lower when applied to professional services than when applied to nonprofessional services. Compare Azad v. United States,388 F.2d 74 (8th Cir. 1968) (radiologist found not to be an employee of a hospital) and James v. Commissioner,supra (pathologist was an employee of a hospital), with Air Terminal Cab, Inc. v. United States,supra (taxicab drivers held to be employees of taxicab companies) and Alsco Storm Windows, Inc. v. United States,311 F.2d 341 (9th Cir. 1962) *28 (window installers were employees as corporate manager had the power to instruct installers as to the way a job should be done). [6]
In light of the above standards, it is clear that the requisite level of control is present to establish that petitioner was an employee during 1980. The contract firms retained significant control over petitioner. They controlled the right to assign petitioner to different jobs, paid his wages, provided for vacations and holidays, and reimbursed him for travel expenses. ARC withheld Federal income taxes and both ARC and Stubbs withheld FICA taxes. In addition, the ARC employment agreement required petitioner to submit weekly time reports, while the Stubbs agreement prohibited petitioner from accepting employment with an engineering firm within 30 days after termination of the Stubbs agreement, and authorized Stubbs to become the property owner of any discoveries or inventions developed by petitioner during the term of his contract with Stubbs. The engineering firms retained similar control over petitioner. At *29 Thiokol, petitioner received work assignments from a supervisor, whom he was required to report to on a daily basis. He did not operate independently, but instead, was integrated into the company's staff as a manager. In this capacity he had five engineers working for him, but it was Thiokol, not petitioner, who hired and assigned these employees. At Stubbs he was similarly directed to work on various engineering projects. In each instance, he did not choose his own hours, but instead was required to be at the firms during their designated work hours. All of these facts clearly indicate that petitioner worked under the direction and control of his principals -- not as an independent contractor. (2) Investment in Facilities.
The evidence presented by petitioner as to this factor is limited. Petitioner did not attempt, for example, to show that he supplied the equipment to be used in his engineering work. What little evidence is in the record clearly suggests otherwise. At Thiokol, for instance, the record reveals that petitioner was provided with an office and most of his drafting equipment. Thus, it appears that at least one principal provided the necessary investment *30 in the work facilities to petitioner, and as to the other principal(s), petitioner has simply failed to provide us with evidence sufficient to make such a determination. (3) Opportunity for Profit or Loss.
Petitioner earned an hourly wage from each of the contract firms involved. This being the case, his earnings were not truly dependent on his own efforts, as would be the case for an independent contractor, rather, he earned a living based on the success of his principals. Therefore, this is yet another indication of an employer-employee relationship. (4) The Right to Discharge.
The ARC employment agreement does not contain a provision for termination, but the Stubbs agreement provides that the agreement is terminable at the will of either party. Hence, it appears that petitioner can resign or be fired by the contract firms. Independent contractors, of course, can also be terminated at will, so we accord this factor little or no weight. [7]
(5) Work Part of the Principal's Regular Business.
The contract firms (ARC and Stubbs) are in the business of supplying personnel, not engineering *31 services. Petitioner's work as an engineer can therefore not be considered to be part of their regular business. On the other hand, petitioner's line of work is clearly part of the regular business of the engineering firms (Thiokol and McDermott), with the result that this factor supports a finding that petitioner was an employee. (6) Permanency of the Relationship.
Petitioner was employed by each of the contract firms for only short periods during 1980. Although this relationship cannot be considered permanent, this factor alone is not a sufficient basis for a finding that he was self-employed. (7) Parties Beliefs.
We have no doubts that the parties believed that an employer-employee relationship was established. The contract firms each treated petitioner as an employee. Both ARC and Stubbs withheld FICA taxes and ARC withheld Federal income taxes. Moreover, although Federal income taxes were not withheld by Stubbs, petitioner did not pay any self-employment taxes for the year in issue. We are also convinced that petitioner believed an employer-employee relationship was created as is evidenced by the following statement he made at trial: "I was really working *32 for a contractor who contracted me to all these jobs." In sum, substantially all of the factors discussed above point to petitioner being an employee. We are not prepared to say with more specificity that he was an employee of the contract firms or the engineering firms, nor is such a determination necessary. For our purposes, we find it necessary only to conclude that petitioner occupied the position of an employee for one, or both, of these principals. As such, petitioner is not entitled to adopt a Keogh retirement plan for 1980 and respondent's determination will accordingly be sustained. [8]
To reflect the foregoing, as well as concessions, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Although a joint notice of deficiency was issued by respondent, petitioner's wife did not elect to file a petition herein.↩
3. Petitioner has not offered any evidence, nor argued, that a retirement plan was set up by Model Engineering, with petitioner as an employee. The facts in the record clearly indicate otherwise. The contribution deduction was taken by petitioner in his individual capacity -- not by Model Engineering. Moreover, Model Engineering was not a party to any contracts with ARC, McDermott, Stubbs, or Thiokol, nor did it report any income from engineering services.↩
4. Significant changes were made to the provisions governing self-employed plans, effective for taxable years beginning after December 31, 1983. See, e.g., sec. 238(d)(1), Tax Equity and Fiscal Responsibility Act of 1982, 96 Stat. 513. For purposes of our analysis, we need only address these provisions as they were in effect during 1980.↩
5. See also Bilenas v. Commissioner,T.C. Memo. 1983-661; Pulver v. Commissioner,T.C. Memo. 1982-437↩.
6. See also Pulver v. Commissioner,supra↩ (inventor not found to be an employee of a manufacturing company).
7. See Neely v. Commissioner,T.C. Memo. 1978-18↩.
8. We sympathize with petitioner's desire to provide for his retirement; however, the plan he established simply did not fit within the provisions of the Code.↩