Jean A. SMITH, as trustee for the next of kin of John Thomas Smith, Plaintiff,

v.

Steffan A. HELGAAS, M.D., and Spectrum Emergency Care, Inc., Defendants.

Civ. No. 4–89–896.

United States District Court, D. Minnesota, Fourth Division.

Jan. 4, 1991.

---

Chris A. Messerly, John Frederic Eisberg, Robins, Kaplan, Miller & Ciresi, St. Paul, Minn., for plaintiff.

Susan Marie Weis, Gary Jeffrey Gordon, Fetterly & Gordon, Minneapolis, Minn., for defendants.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Jean Smith brought this medical malpractice action following the death of her husband in June 1989. She sues under diversity jurisdiction as trustee for the next of kin of her deceased husband. Defendants are Steffan Helgaas, M.D., and Spectrum Emergency Care, Inc. (Spectrum). Before the court is Spectrum's motion for summary judgment.

### I.

Plaintiff alleges that on June 6, 1989, Helgaas negligently failed to diagnose John Thomas Smith's subarachnoid hemorrhage at St. Olaf Hospital (St. Olaf) in Austin, Minnesota, a condition which led to his death on June 19, 1989.

Plaintiff seeks to hold Spectrum vicariously liable for Helgaas's conduct as his employer. Spectrum contracts with doctors to provide emergency medical services at various hospitals which contract with Spectrum for such care. The details of these contracts and the relationships among Spectrum, Helgaas, and St. Olaf will be set out below.

Spectrum argues that the undisputed facts show Helgaas was an independent contractor, not an employee, and that it cannot be held vicariously liable for his actions. Spectrum requests summary judgment dismissing it from the case.

Plaintiff Smith argues that Helgaas was an employee of Spectrum, or at the least that there are disputed material facts as to Helgaas's status which should be resolved only by a jury.

### II.

On a motion for summary judgment, all material facts and inferences are construed in favor of the non-moving party. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). To defeat a motion for summary judgment, however, the non-moving party must show through specific evidence that there are material facts in dispute creating a genuine issue for trial; it may not rest only upon the allegations or denials of its pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Under Minnesota law, which applies in this case, "[t]he issue of employment status is one of fact.... It is for the trier of fact to distinguish between the 'right-to-control' characteristic of an employer-employee relationship and the fact of powerful influence not inconsistent with an independent-contractor relationship." *Ossenfort v. Associated Milk Producers, Inc.*, 254 N.W.2d 672, 676 (Minn.1977). The general rule is that "unless the evidence is conclusive, the determination of whether a person is an independent contractor is a jury question." *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775, 789 (1975).

There are five factors to be considered in determining the existence of an employment relationship: (1) the right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge. *Wangen v. City of Fountain*, 255 N.W.2d 813, 815 (Minn.1977). "The most important of these factors is the right

to control the means and manner of performance." *Id.*

The meaning of "control" in the context of professional services is subject to special consideration. *Azad v. United States,* 388 F.2d 74, 77 (8th Cir.1968) (applying Minnesota law). "From the very nature of the services rendered by physicians and other professionals, it would be wholly unrealistic to suggest that an employer should undertake the task of controlling the manner in which the professional conducts his activities." *Id.*

Plaintiff relies on several of the factors enunciated in *Azad* to support her conclusion that Helgaas was an employee of Spectrum, although *Azad* held that the doctor was not an employee of the hospital.[1] Plaintiff also relies on a case under Georgia law, *Stewart v. Midani,* 525 F.Supp. 843 (N.D.Ga.1981), which held that both the physician in charge of the allegedly negligent doctor's emergency room practice group and the hospital where the doctor practiced should be denied summary judgment on the issue of vicarious liability.

■ In the present case, several factors incline toward finding an employment relationship and several factors incline toward finding an independent contractor relationship. The following factors weigh in favor of finding that Helgaas was an employee of Spectrum:

1. An agreement requiring Helgaas to work at the hospitals assigned by Spectrum, at the hours scheduled by Spectrum.

2. Payment to Helgaas by Spectrum for hours worked.

3. Spectrum's right to terminate its contract with Helgaas at any time.

4. The duration of the contract was for one year, and Helgaas had worked for Spectrum previously at other sites.

5. Spectrum collected the fees from the hospital and paid back a portion to Helgaas.

6. Helgaas agreed not to compete with Spectrum for 18 months following the termination/completion of the contract for emergency services at any hospital where he had been scheduled by Spectrum.

7. Spectrum provided medical malpractice insurance to Helgaas. The contract provides that Spectrum deduct 98 cents per hour from Helgaas's compensation for this insurance.[2]

Plaintiff argues that there are other factors to be considered in this case, but these factors are not relevant or supported.[3]

Over against these factors, the following factors weigh in favor of finding that Helgaas was an independent contractor with Spectrum:

1. The contract between Helgaas and Spectrum stated that he was an independent contractor.

2. The contract provided, and it is undisputed by the parties, that Spectrum exercised no control over the manner

---

1. *Azad* involved a taxpayer suit against the IRS, where the doctor-taxpayer sought a refund of taxes paid on certain income he received from the hospital which would not have been taxable had he been an employee. The Eighth Circuit reviewed the case after bench trial in the district court. Although several factors weighed toward finding an employment relationship, the court found sufficient evidence to uphold the trial court's conclusion that the doctor was not an employee.

2. The record does not indicate whether this is the full amount of the premium or whether Spectrum also pays a portion. If Spectrum pays a portion, this factor weighs toward finding an employment relationship, since it would be a fringe benefit provided to Helgaas by Spectrum.

3. Plaintiff contends that Helgaas was prohibited by Spectrum from practicing medicine anywhere in the Austin, Minnesota, area other than in the emergency room of St. Olaf. This contention is based on the contract between Spectrum and St. Olaf, however, and is not part of Spectrum's contract with Helgaas.

Plaintiff also relies on deposition testimony by Helgaas where the lawyer asked him, "[W]here were you employed by Spectrum?" and Helgaas replied, "Primarily in Austin." Plaintiff argues that this shows Helgaas believed he was an employee of Spectrum. In the deposition excerpt provided by plaintiff, however, Helgaas does not himself use the word "employee" or any variation thereof. The excerpt is insufficient to show Helgaas's state of mind on this question.

in which Helgaas rendered medical care.

3. The contract specified that Helgaas was subject to professional supervision by the hospital's medical staff; this was included in Spectrum's contract with St. Olaf.

4. Spectrum did not furnish Helgaas with any material or tools to perform his medical duties.

5. Spectrum did not control the premises where Helgaas worked.

6. Helgaas had the right to terminate his contract with Spectrum at any time.

7. The contract between Helgaas and Spectrum did not limit Helgaas to medical practice only with Spectrum. His deposition shows that he "had done some work for several years on occasion for Spectrum," and that while working at St. Olaf he had worked at least at one other hospital. While working at a student health service before coming to St. Olaf, he would occasionally work at various hospitals for Spectrum on weekends. Helgaas depo. at 36–37.

Spectrum contends that these factors should lead to its dismissal by summary judgment, since the complaint does not allege that Spectrum committed any independent act of negligence.

The factor which was most persuasive in *Azad* was that the doctor was not restricted in his performance of services to the hospital which allegedly employed him. He was permitted to and in fact rendered services at other hospitals. Also "[o]f particular significance" was the fact that the doctor and the hospital regarded their relationship as that of independent contractor. *Azad*, 388 F.2d at 77–78. Both these factors weigh in favor of Spectrum in the present case.

Plaintiff's position is strengthened, however, by the holding in *Stewart v. Midani, supra.* In *Stewart*, the court denied summary judgment to the head of the group of emergency room doctors with whom the allegedly negligent doctor worked. Although their contract stated that the doctor

was an independent contractor, the court considered the control which the group exercised over the doctor's schedule and the way the group collected fees from the hospital, remitting a portion to the doctor. The court concluded that the policy supporting vicarious liability under the doctrine of respondeat superior—that employers who profit by conduct which experience teaches can result in harm to others should bear the cost of that harm—was consistent with holding that the head of the emergency room group should not be dismissed from the case.

Minnesota law is clear that summary judgment cannot be granted on the issue of an employment relationship unless the evidence is conclusive. In the present case, there are too many conflicts in the evidence to grant summary judgment. Several factors incline in each direction. Ultimately, the factfinder must determine in which direction these factors weigh.