T.C. Summary Opinion 2005-1


UNITED STATES TAX COURT


JOHN A. WALZ, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17415-03S.          Filed January 3, 2005.


<u>Charles Herbert Magnuson</u>, for petitioner.

<u>Valerie L. Makarewicz</u>, for respondent.


PAJAK, <u>Special Trial Judge</u>: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the

Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's 2000 Federal income tax in the amount of $18,468, an addition to tax under section 6651(a)(1) in the amount of $2,403, and a penalty under section 6662(a) in the amount of $5,181.

The Court must decide whether petitioner is an employee and, if so, whether he is entitled to deduct certain business expenses, whether petitioner is entitled to deduct home office expenses, whether petitioner is subject to an addition to tax under section 6651(a)(1), and whether petitioner is subject to a penalty under section 6662(a).

Some of the facts in this case have been stipulated and are so found.  Petitioner resided in Pasadena, California, at the time he filed his petition.

During 2000, petitioner was a professional cellist.  In fact, he was and is internationally, as well as nationally, recognized as a cellist of exceptional ability.  Petitioner's career has many facets.  His main focus is as a concert soloist. He also teaches music.  He does "studio work", recording background music for movies and television.  Petitioner has performed for about 600 motion pictures.

Petitioner is a founding member of the Pacific Trio, together with pianist Edith Orloff.  Petitioner is a faculty member of Idyllwild Arts.

Petitioner was a member of the Professional Musicians, American Federation of Musicians, Local 47; and Long Beach Area Musicians Association, Local 353, American Federation of Musicians.

Petitioner performed under union agreements. The following are some of the agreements: Master Agreement between The Music Center Opera Association and the Professional Musicians, Local 47; Agreement between The Musicians Association, Local 353, A.F. of M. and The Long Beach Symphony Association.

Petitioner offered his professional services to various musical organizations. There is no question but that petitioner kept his abilities and his cellos in fine tune so that he could perform in an exceptional manner. During 2000, petitioner performed for 25 organizations and received 25 Forms W-2, Wage and Tax Statement. The organizations withheld Federal, State, Social Security, and Medicaid taxes from petitioner's earnings.

Petitioner performed for the Los Angeles Opera (Opera) for approximately 10 years. The Opera selected the music to be performed. The Opera provided him with the music for the season. The Opera required petitioner to attend rehearsals. The Opera set the time and length of the rehearsals. Petitioner could not leave the rehearsals unless he was excused. The Opera would set the dress uniform, whether tuxedo or otherwise, for the performances. Petitioner claimed he had "quite a bit of say"

over the personnel in the cello section and some input as to the rest of the orchestra.

Petitioner worked for the Long Beach Symphony (Symphony) for 20 years under conditions similar to those of the Opera.

Petitioner is hired for his "interpretive abilities" but is subject to the unifying influence of the conductor. Petitioner did not hold himself out to the Opera as an independent contractor. Petitioner was paid for each performance by an hourly wage set by union contract. Petitioner did not submit a bill to the Opera for services rendered. Petitioner said the union contract specified that the "principal gets scale and half, and I was able, because of my reputation, to request double scale".

Petitioner also provided background music for motion pictures. The movie companies would instruct him when to come and perform. The movie companies provided him with the music. There are no rehearsals because "rehearsing and recording is all done as part of the same session." He could not leave the performance at will. Petitioner did not submit bills to the movie companies, except bills were submitted for cartage ("extra money * * * for lugging around large instruments").

A representative for the Opera testified that the Opera withheld taxes, made contributions to petitioner's pension plan, and that the contributions were mandatory under the collective

bargaining agreement.  The Opera contributed "on behalf of each musician it employs in the amount of 10% of that Musician's Scale wages."  The collective bargaining agreement provides for employer rights as follows:

> Employer's Rights: The Employer shall at all times have complete supervision, direction and control over the Services of Musicians, and expressly reserves the right to control the manner, means and details of the performance of Services by the Musicians as well as the ends to be accomplished.

The representative also observed that the Opera pays for petitioner's parking and his workmen's compensation.  The Opera considered petitioner to be an employee.

A representative from the Symphony testified that his orchestra issued a Form W-2 to petitioner, withheld FICA and Medicare, and made 8 percent pension contributions, and 6 percent contributions to petitioner's health and welfare fund in accordance with the union contract.  The representative stated that "we consider our musicians part-time employees".

Petitioner requested an extension of time to file his 2000 return, which was granted until August 15, 2001.  Petitioner had no further extensions.  His return was filed on November 21, 2001.

Petitioner filed his Form 1040, U.S. Individual Income Tax Return, for 2000 with an attached Schedule C, Profit or Loss From Business.  The return was prepared by Mr. Henry Orloff, a tax practitioner and petitioner's accountant.  On the Schedule C,

petitioner reported his profession as "INDEPENDENT PROFESSIONAL MUSICIAN/SOLOIST CELLIST-Classic Music." His reporting Code was listed as 711510 (Independent artists, writers, & performers). For 2000, petitioner reported $174,367 of income on his Schedule C.

Petitioner claimed deductions on the Schedule C for the following expenses, which total $83,588:

| | |
|---|---:|
| Auto | $ 5,907 |
| Depreciation | 12,161 |
| Insurance | 2,632 |
| Interest | 350 |
| Legal/professional | 1,000 |
| Office | 1,874 |
| Rent | 6,869 |
| Repairs | 3,741 |
| Supplies | 2,707 |
| Travel | 10,135 |
| Meals | 1,969 |
| Utilities | 5,014 |
| Other | 20,687 |
| Home office | 8,542 |

Respondent issued a notice of deficiency on August 11, 2003. Respondent disallowed the Schedule C expenses and made computational and other adjustments.

After the notice of deficiency was issued, petitioner filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 2000 on September 14, 2004. On that form, petitioner stated that he was "Changing from originally filed Schedule C with Form 1040, to using Form 2106 (Employee Business Expense)". In his amended return, petitioner substantially reduced his claimed business expenses.

We first consider the issue presented and argued by the parties of whether petitioner is an employee or is self-employed.

This Court considers various factors to determine whether there is an employment relationship between the parties. Relevant factors include: (1) The degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used in the work; (3) the opportunity of the individual for profit or loss; (4) whether or not the principal has the right to discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believe they are creating. No one factor dictates the outcome. Rather, we must look at all the facts and circumstances of each case. Weber v. Commissioner, 103 T.C. 378, 379 (1994), affd. 60 F.3d 1104 (4th Cir. 1995).

The "right-to-control" test is a crucial test to determine the nature of a working relationship. The degree of control is of great importance, though not conclusive. Accordingly, we must examine not only the control exercised by an alleged employer, but also the degree to which the alleged employer may intervene to impose control. For an employer to retain the requisite control over the details of an employee's work, the employer need not stand over the employee and direct every move made by that employee. Also, the degree of control necessary to find employee

status varies according to the nature of the services provided. Id. at 387-388.

The threshold level of control indicative of employee status is generally lower when applied to professional services than when applied to nonprofessional services. Id. In James v. Commissioner, 25 T.C. 1296 (1956), this Court stated that "despite this absence of direct control over the manner in which professional men [and women] shall conduct their professional activities, it cannot be doubted that many professional men [and women] are employees." Also, in Azad v. United States, 388 F.2d 74, 77 (8th Cir. 1969), the Court of Appeals said that "From the very nature of the services rendered by * * * professionals, it would be wholly unrealistic to suggest that an employer should undertake the task of controlling the manner in which the professional conducts his activities." Generally a lower level of control applies to professionals. Petitioner is a professional musician.

Section 7491(a) is not applicable in this case because petitioner did not meet the substantiation requirements. Petitioner has the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

Petitioner contends that no one had the right to control either the method or the means by which he played his cello. However, there is no question but that the musical organizations

exercise control over petitioner in specifying when he plays, in determining the length of his performance, when he participates in rehearsals, whether he can take breaks, which dress uniform he is required to wear, and in making him subject to the instructions of the conductor.  The musical organization provides the place for rehearsals, the place for performances, and the music used.  Petitioner has the opportunity to work for an hourly wage and we note he was an economically successful musician even after deduction of allowable expenses.  His performances are obviously part of the principal's regular business.  Petitioner has had a long-term relationship with at least two significant musical organizations.  Petitioner never held himself out as an independent contractor to the musical organizations.  He did so only when he filed his original return for 2000.  He retreated from that position when he filed his amended return, in effect admitting he was an employee.  The musical organizations treated him as an employee, considered him to be an employee, issued Forms W-2, made withholding of various taxes, and made pension contributions on his behalf.

Weighing all the facts and circumstances, we find that petitioner was an employee during the year in issue.

We turn to the issue of whether petitioner is entitled to deduct certain expenses.  Respondent disallowed petitioner's Schedule C deductions in full and determined that petitioner did

not establish that the Schedule C expenses were ordinary and necessary business expenses of petitioner.  At trial, the parties treated these deductions as though they were claimed as employee business expenses and so shall we.

In this posture of the case, we must decide whether the expenses in question are deductible as ordinary and necessary business expenses of petitioner's employment.  Our findings in this record are based in part upon the testimony of petitioner.  Our evaluation of petitioner's testimony is founded upon "the ultimate task of a trier of the facts – the distillation of truth from falsehood which is the daily grist of judicial life."  Diaz v. Commissioner, 58 T.C. 560, 564 (1972).  In this case, we found petitioner to be an honest, sincere, and credible witness.

Section 162(a) allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  To be deductible as a business expense, the expenditure must relate to activities which constitute the current carrying on of an existing trade or business.  Corbett v. Commissioner, 55 T.C. 884, 887 (1971).  Whether activities carried on by an individual can be characterized as a trade or business is a question of fact.  Id. at 887.  This Court has long held that a taxpayer may be in the trade or business of being an employee.  Primuth v. Commissioner, 54 T.C. 374, 377 (1970).

Deductions are strictly a matter of legislative grace. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers must substantiate claimed deductions. Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), affd. per curium 540 F.2d 821 (5th Cir. 1976). Moreover, taxpayers must keep sufficient records to establish the amounts of the deductions. Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965); sec. 1.6001-1(a), Income Tax Regs. Generally, except as otherwise provided by section 274(d), when evidence shows that a taxpayer incurred a deductible expense, but the exact amount cannot be determined, the Court may approximate the amount, bearing heavily if it chooses against the taxpayer whose inexactitude is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The Court, however, must have some basis upon which an estimate can be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274(d) imposes stringent substantiation requirements for the deduction of traveling expenses (including meals and lodging while away from home), and certain listed property as defined under section 280F(d)(4). Listed property includes any passenger automobile or other property used as a means of transportation. Taxpayers must substantiate by adequate means certain elements in order to claim deductions, such as the amount of such expenditure, the date of the expenditure or use, the

place of each separate expenditure, and the business purpose for an expenditure or use.  Sec. 274(d); sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  To substantiate a deduction by means of adequate records, a taxpayer must maintain an account book, diary, log, statement of expense, trip sheets, and/or other documentary evidence, which, in combination, are sufficient to establish each element of expenditure or use.  The log must be made at or near the time of the expenditure.  Sec. 1.274-5T(c)(2)(i) and (ii), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

Petitioner is entitled to deduct $350 for interest on purchases of business items and $1,874 for expenses relating to his computer.  The computer was used to send "CD" labels to conductors and booking agents.  Petitioner paid $1,000 for tax return preparation and he is entitled to deduct that amount.

Section 280A limits the allowance of deductions related to the use of a home office.  There is an exception if a portion of the house is used exclusively on a regular basis as the principal place of business for the taxpayer's trade or business.  Sec. 280A(c)(1)(A).  Section 280A(c) requires that the taxpayer "use the portion of the home solely for the purpose of carrying on a trade or business and that there be no personal use of that part of the home."  Sengpiehl v. Commissioner, T.C. Memo. 1998-23.

Petitioner claimed a $8,542 deduction for home office

expenses. Petitioner had a residence in Pasadena and used one bedroom solely as a studio/home office. In his home office, petitioner practiced his cello for several hours almost daily. He had part of his music library there. He kept his cello there. He described the cello as follows: "It's a beautiful cello made in France in the late 1800s by a maker named Joseph Hel." Petitioner stored his extra cellos there. He has a computer and printer on his computer desk. Petitioner kept his recording equipment there for use by his students and himself. Petitioner is entitled to deduct $8,542 for home office expenses. Popov v. Commissioner, 246 F.3d 1190 (9th Cir. 2001), revg. on this issue, T.C. Memo. 1998-374. The Ninth Circuit is the circuit to which this case would be appealable if it were appealable. His additional claim for the expenses of another studio in Idyllwild is denied because as he put it: "the entire sort of downstairs is one long room that I use." Petitioner did not claim it was used exclusively for a studio, and at a minimum he had to walk through that room to get to the upstairs.

Petitioner deducted $3,741 for repairs. Petitioner had all the bills concerning repairs to his cello. This included new strings, rehairing the bow, related adjustments, and a new bridge. Petitioner is entitled to deduct this amount.

Petitioner claimed $2,707 for supplies. He conceded he could provide documentation only for $2,689.72. Part of this

expense related to a tour he produced with Ensemble Con Brio (Ensemble), a German chamber orchestra. He provided brochures for the concert programs. These were printed on a computer. He paid postage to send them out. Petitioner toured with Ensemble playing the "Haydn" concerts. Petitioner was the soloist on this tour. They recorded their performance at the end of the tour. Petitioner is entitled to deduct the revised amount for supplies.

The claimed $10,135 for travel was also with Ensemble. The travel was for the rental of vans to transport the groups and for airline fare to reach destinations. Petitioner also claimed a deduction for automobile expenses and automobile insurance.

Unfortunately for petitioner, Congress has passed section 274 with respect to traveling expenses (including meals and lodging while away from home), and listed property. As detailed above, section 274(d) imposes stringent substantiation requirements for the deduction of these expenses. Petitioner did not meet the strict substantiation rules of section 274. He is not entitled to a deduction for these expenses.

The claimed deduction of $1,969 is for meals petitioner ate. Based on petitioner's testimony, we find this to be a non-deductible personal expense under section 262. As the Court said at trial: "Not everything in life is deductible."

The deduction for other expenses represents various items. Petitioner testified that $566 was for the purchase of CDs,

books, DVDs, and sheet music, all of which related to his profession.  A $670 charge was for new publicity shots.  The foregoing items are deductible.  Attending various concerts is a nondeductible personal expense.  Sec. 262.  Petitioner is entitled to deduct the union dues he paid of $3,415 and business-related bank fees of $1,679.

All other determinations by respondent are sustained.

Section 7491(c) places the burden of production on respondent with respect to the liability of any individual for any penalty, addition to tax, or additional amount.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  To meet his burden of production, respondent must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. Id.  The burden of proof remains on the taxpayer with respect to issues such as reasonable cause or substantial authority.  Id. Because petitioner untimely filed his 2000 return, respondent has satisfied his burden of production with respect to the addition to tax under section 6651(a)(1).  Id. at 447.  Respondent has satisfied his burden of production with respect to the accuracy-related penalty under section 6662(a) because petitioner took inconsistent positions on his return and amended return.

Section 6651(a)(1) provides for an addition to tax for failure to file a Federal income tax return by its due date, determined with regard to any extension of time for filing

previously granted, unless such failure was due to reasonable cause and not willful neglect. The addition is 5 percent of the amount of tax required to be shown on the return, with 5 percent added for each additional month that the return is late, not to exceed 25 percent in total.

Section 6081 provides that an extension may be granted for the filing of a return. Petitioner received an extension to file his return to August 15, 2001. Nevertheless, he did not file a return until November 21, 2001. Petitioner offered no explanation for his late filing. Respondent is sustained on this issue.

No penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was reasonable cause and that the taxpayer acted in good faith. See sec. 6664(c). Whether a taxpayer acted with good faith depends upon the facts and circumstances of each case. See sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on the advice of a professional tax adviser constitutes reasonable cause and is in good faith if, under all the circumstances, the reliance was reasonable and the taxpayer acted in good faith. United States v. Boyle, 469 U.S. 241, 251 (1985).

Petitioner supplied his accountant with complete and accurate information. Petitioner relied totally on Mr. Henry Orloff, his accountant, to prepare his income tax return. Mr.

Orloff was experienced in tax matters and held himself out as a tax practitioner. Petitioner reasonably relied on his advice, and we find that he is not liable for the penalty under section 6662(a). <u>Woody v. Commissioner</u>, 19 T.C. 350, 355 (1952).

Contentions we have not addressed are irrelevant, moot, or without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered under Rule 155</u>.