DAVID W. MATTHEWS AND CHRISTA MATTHEWS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

RONALD AND MARIE DAVIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4254-87, 7717-87.        Filed February 16, 1989.

*Gerald A. Kafka, William F. Brown,* and *Susan B. Rock,* for the petitioners.

*David S. Kosterlitz* and *Susan T. Mosley,* for the respondent.

COLVIN, *Judge:* The issues for decision are:

(1) May petitioners[1] exclude from gross income as foreign earned income under section 911[2] certain wages paid by a nonappropriated fund instrumentality of the United States

---

[1]These cases were consolidated for opinion under Rule 141.

[2]All statutory references are to the Internal Revenue Code of 1954 as amended, and as in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

while located in the Federal Republic of Germany during the taxable years at issue.

(2) If petitioners are not eligible to make the election under section 911, were the underpayments of tax due to negligence or intentional disregard of rules or regulations under section 6653(a).

Section 911 allows a qualified individual to elect to exclude limited amounts of foreign earned income from gross income. Excluded from the definition of foreign earned income (i.e., not eligible for section 911) are amounts "paid by the United States or an agency thereof to an employee of the United States or an agency thereof." Sec. 911(b)(1)(B)(ii).

As discussed below, we hold that petitioners are employees of an agency of the United States and are not eligible for exclusion of that income under section 911. We also find they are not subject to the addition to tax for negligence or intentional disregard of rules or regulations under section 6653(a).

Respondent determined deficiencies in petitioners' Federal income tax for the 1983 and 1984 taxable years as follows:

DAVID W. AND CHRISTA MATTHEWS

| | | Additions to tax | |
| Taxable year | Deficiency | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
|---|---|---|---|
| 1983 | $3,420 | $171.00 | 50% interest on $3,420 |
| 1984 | 3,496 | 174.80 | 50% interest on $3,496 |

RONALD AND MARIE DAVIS

| | | Additions to tax | |
| Taxable year | Deficiency | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
|---|---|---|---|
| 1983 | $2,650 | $132.50 | 50% interest on $2,650 |
| 1984 | 2,866 | 143.30 | 50% interest on $2,866 |

FINDINGS OF FACT

These cases have been submitted fully stipulated under Rule 122. The stipulated facts are found accordingly. The

stipulation of facts and exhibits attached thereto are incorporated by reference.

### David W. Matthews

David W. Matthews (Matthews) and Christa Matthews (collectively Mr. and Mrs. Matthews) are husband and wife who have lived in the Federal Republic of Germany (West Germany) since 1969. They used an APO New York address when they filed their petition.

At all times pertinent to this case, Matthews was a U.S. citizen. Mrs. Matthews did not work outside her home during the taxable years 1983 and 1984. She is a party to this case solely because she filed joint returns with Matthews during the years in issue.

### Ronald Davis

Ronald Davis (Davis) and Marie Davis (collectively Mr. and Mrs. Davis) are husband and wife. During 1983 and 1984, Mr. and Mrs. Davis resided in West Germany. At the time their petition was filed, Mr. and Mrs. Davis used an APO New York address.

Davis was a U.S. citizen at all times pertinent to this dispute. Like Mrs. Matthews, Mrs. Davis was not employed outside her home during the taxable years 1983 and 1984. She is a party to this action because she filed joint returns with Davis during the years at issue.

### Nonappropriated Fund Instrumentalities

During taxable years 1983 and 1984, the years before the Court, Matthews and Davis both worked for nonappropriated fund instrumentalities (NAFIs) associated with the Morale, Welfare, and Recreation (MWR) system of the U.S. Army. They were required to work 40 hours per week and were supervised by others working for their respective NAFI.

Matthews worked in the European Regional Office of the U.S. Army Community and Family Support Center (CFSC). Davis worked for the U.S. Army Europe Morale, Welfare, and Recreation Fund (USAREUR fund).

The CFSC and USAREUR fund are NAFIs because a portion of their funding comes from funds that are not appropriated

by Congress. Both NAFIs carefully segregate their nonappropriated funds from funds they receive through the appropriations process.

Matthews and Davis are compensated only through the use of nonappropriated funds. Matthews and Davis were both paid on a salaried basis in 1983 and 1984. They did not have written employment contracts during those years.

Mr. and Mrs. Matthews prepared and timely filed joint U.S. income tax returns for taxable years 1981 and 1982 reporting all income paid to Matthews by the CFSC. The returns were not signed by a tax return preparer. On or about May 22, 1984, Mr. and Mrs. Matthews filed a claim for refund for taxable year 1982, attaching Form 2555 to exclude from U.S. taxable income the compensation Matthews received from the CFSC for taxable year 1982. On March 4, 1985, Matthews was paid a refund of $5,184.39, comprised of $4,175 in tax and $1,009.39 in interest.

Mr. and Mrs. Matthews prepared joint U.S. income tax returns for taxable years 1983 and 1984, and timely filed these returns with the Internal Revenue Service. Their returns were not signed by a preparer. They used Form 2555 to exclude Matthews' compensation from CFSC in 1983 and 1984 from U.S. taxable income.

Mr. and Mrs. Davis prepared and timely filed a joint U.S. income tax return for taxable year 1982 reporting all income paid to Davis by the USAREUR fund. This return was not signed by a tax return preparer. Mr. and Mrs. Davis filed a claim for refund on or about September 14, 1983, for taxable year 1982, attaching Form 2555 to exclude from U.S. taxable income the compensation Davis received from the USAREUR fund for taxable year 1982. On December 26, 1983, Davis was paid a refund of $2,738.73 comprised of $2,519 in tax and $219.73 in interest.

Mr. and Mrs. Davis prepared joint U.S. income tax returns for taxable years 1983 and 1984, and timely filed them with the Internal Revenue Service. Neither of these returns was signed by a tax return preparer. Mr. and Mrs. Davis used Form 2555 to exclude from U.S. taxable income Davis' compensation in 1983 and 1984 from the USAREUR fund.

There is no evidence that either petitioner sought tax advice.

Respondent issued statutory notices of deficiency to petitioners determining that NAFI compensation is not excludable. Respondent also determined additions to tax for negligence under section 6653(a).

Petitioners timely filed their petitions. Respondent's motion to consolidate for trial, briefing, and opinion was granted.

The parties agree that petitioners are qualified individuals paid by the United States or an agency thereof. They disagree as to whether each petitioner is "an employee of the United States or an agency thereof."

Petitioners contend that they are not employees of their payor under section 911 because section 2105(c) of title 5 and Army regulations deem petitioners not to be employees of the United States for certain purposes.

Respondent contends that common law rather than section 2105(c) of title 5 and Army regulations governs whether petitioners were employees for purposes of section 911, and that petitioners are common law employees.

## OPINION

### Statutory and Legislative History

The relevant language of section 911 was amended in 1981. Petitioners believe the 1981 change made them eligible for the exclusion of income under section 911.

Prior to the Economic Recovery Tax Act of 1981 the exclusion of income under section 911 did not apply to amounts "paid by the United States or any agency thereof." Similar language has applied since 1926.[3]

From 1978 to 1981, this language was set forth as follows:

SEC. 911. INCOME EARNED BY INDIVIDUALS IN CERTAIN CAMPS OR FROM CHARITABLE SERVICES.

(a) GENERAL RULE.—In the case of an individual described in section 913(a)[4] who, because of his employment, resides in a camp located in a

---

[3]A legislative history of sec. 911 up to and including the Economic Recovery Tax Act of 1981 may be found in *Smith v. Commissioner*, 77 T.C. 1181 (1981), affd. 701 F.2d 807 (9th Cir. 1983).

[4]Prior to the Economic Recovery Act of 1981, sec. 913(a)(1) provided:

hardship area, or who performs qualified charitable services in a lesser developed country, the following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

(1) BONA FIDE RESIDENT OF FOREIGN COUNTRY.—If such individual is described in section 913(a)(1), amounts received from sources within a foreign country or countries (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during the period of bona fide residence.

See Pub. L. 95-615, 92 Stat. 3098, sec. 209, as amended in Pub. L. 96-222, 94 Stat. 222, 224, secs. 107(a)(1)(B) and 108(a)(1)(C) and (D), and Pub. L. 96-595, 94 Stat. 3464, sec. 4(a). Subsection (a) was enacted in 1978. Sec. 202(a), Pub. L. 95-615, 92 Stat. 3097.

The Economic Recovery Tax Act of 1981 amended this language to provide that the exclusion of income under section 911 does not apply to amounts "paid by the United States or an agency thereof to an employee of the United States or an agency thereof." Section 911, as amended, reads as follows:

SEC. 911. CITIZENS OR RESIDENTS OF THE UNITED STATES LIVING ABROAD.

(a) EXCLUSION FROM GROSS INCOME.—At the election of a qualified individual (made separately with respect to paragraphs (1) and (2)), there shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year—

(1) the foreign earned income of such individual, and  * * *

\*         \*         \*         \*         \*         \*         \*

(b) FOREIGN EARNED INCOME.—

(1) DEFINITION.—For purposes of this section—

(A) IN GENERAL.—The term "foreign earned income" with respect to any individual means the amount received by such individual from sources within a foreign country or countries which constitute earned income attributable to services performed by such individual during the period described in subparagraph (A) or (B) of subsection (d)(1), whichever is applicable.

(B) CERTAIN AMOUNTS NOT INCLUDED IN FOREIGN EARNED INCOME.—The foreign earned income for an individual shall not include amounts—

\*         \*         \*         \*         \*         \*         \*

---

(a) ALLOWANCE OF DEDUCTION.—In the case of an individual who is—

(1) BONA FIDE RESIDENT OF FOREIGN COUNTRY.—A citizen of the United States and who establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or

(ii) paid by the United States or an agency thereof to an employee of the United States or an agency thereof * * *

See sec. 111(a) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 190, Aug. 13, 1981.

The statutory revision was first reported by the House Ways and Means Committee and passed by the House of Representatives in H.R. 4242, 97th Cong., 1st Sess. (1981). The Ways and Means Committee Report explained the change as follows:

The bill extends the benefits of the exclusion to individuals who are paid by the United States but who are not eligible for any exclusion under section 912 or any other provision of U.S. law. As a general rule, therefore, employees of the Federal Government will not be eligible for the exclusion. [H. Rept. 97-201, at 62 (1981), 1981-2 C.B. 352, 355.]

The Senate Finance Committee and Senate adopted the identical language. S. Rept. 97-144, at 37 (1981), 1981-2 C.B. 412, 420.

The Conference report provided:

The bill extends the benefits of the exclusion to individuals who receive compensation from the U.S. or any agency thereof, but who are not employees of the U.S. or any agency thereof. Thus, for example, the bill extends the exclusion to certain overseas independent contractors and teachers at certain schools for U.S. dependents who are not employees of the U.S. or any agency thereof. [H. Rept. 97-215 (Conf.) at 195, 204 (1981), 1981-2 C.B. 481, 486.]

*Analysis of Exclusion of Income Under Section 911*

To decide if petitioners are eligible for exclusion of income under section 911, we will address two questions:

(1) Are the NAFIs in this case agencies of the United States for purposes of section 911(b)(1)(B)(ii)?

(2) If so, are petitioners (Mr. Matthews and Mr. Davis) employees of a NAFI?

If the answer to both questions is yes, then petitioners are not eligible for exclusion of income under section 911.

*These NAFIs Are Agencies of the United States*

The parties here agree, and we hold, that the NAFIs before us are agencies of the United States for purposes of section 911(b)(1)(B)(ii).

Nonappropriated fund instrumentalities have long been held to be agencies of the United States. The Supreme Court held that NAFIs are agencies of the United States in *Standard Oil Co. v. Johnson,* 316 U.S. 481, 484 (1942) (Army post exchange). This Court has followed *Johnson* when interpreting former section 911.[5] *Raffensperger v. Commissioner,* 33 T.C. 1097, 1109 (1960) (Union Club of Tokyo operated as an Army nonappropriated sundry fund held to be instrumentality of United States); *Donaldson v. Commissioner,* 51 T.C. 830, 837 (1969) (commissary held to be agency of United States); *Kalinski v. Commissioner,* 64 T.C. 119, 129 (1975), affd. 528 F.2d 969 (1st Cir. 1976) (U.S. Air Force Europe Child Guidance Center was agency of United States). Other courts have also followed *Johnson* in interpreting section 911. See, e.g., *Morse v. United States,* 443 F.2d 1185, 1188, 195 Ct. Cl. 1, 6-7 (1971), cert. denied 405 U.S. 989 (1972) (U.S. Employees Agency of Teheran, Iran, which provided Government dependents with recreational activities, food, and other items, held to be agency of United States); *Gradall v. United States,* 329 F.2d 960, 962, 161 Ct. Cl. 714, 718-719 (1963) (nontax case where Court of Claims found military post exchange to be instrumentality of United States and held NAFI employee not entitled to recover damages under Federal Tort Claims Act or Federal Employee Compensation Act).

However, a nonappropriated fund agency may be shown by particular facts not to be an agency of the United States. See *Kalinski v. Commissioner, supra* at 130. In a case involving former section 911, the Court of Claims held that an officer's mess in Taipei was not an agency of the United States. *Brummitt v. United States,* 329 F.2d 966, 165 Ct. Cl. 78 (1964). The *Brummitt* conclusion was reached on particular facts that the club was constructed on land it independently owned; it negotiated its own construction

---

[5]See also *Taylor v. Commissioner,* T.C. Memo. 1971-53 (Kindergarten School Fund at a U.S. Air Force base in the Philippines was a nonappropriated fund instrumentality of the United States under former sec. 911(a)); *Dykes v. Commissioner,* T.C. Memo. 1971-266 (U.S. Employees' Association of Teheran, Iran, was an agency of the United States under former sec. 911(a)); *Schelonzek v. Commissioner,* T.C. Memo. 1988-137 (The taxpayer did not base his claim to the sec. 911 exclusion on his status as an employee of a NAFI, the Army and Air Force Exchange Service in Munich, Federal Republic of Germany. Instead, the taxpayer relied upon the North Atlantic Treaty. We rejected the taxpayer's claim and specifically found that the taxpayer was paid by and was an employee of an instrumentality of the United States).

loan; it received no funds from the military command; and it provided in its articles that "this organization is not a nonappropriated fund." *Brummitt v. United States, supra* at 968-969.

*Petitioners Are Employees of NAFIs*

Petitioners argue that the Economic Recovery Tax Act of 1981 change to section 911 allows them to exclude their NAFI income as foreign earned income. Prior to 1981, section 911 required that income eligible for section 911 be paid "by the United States or an agency thereof." The Economic Recovery Tax Act of 1981 retained that language, and added that, to be eligible for section 911, income must be paid "to an employee of the United States or an agency thereof."

Important to petitioners' position is the insertion of the requirement that income not only be paid by the United States or an agency thereof, but also be paid to an employee of the United States or an agency thereof. Petitioners argue that they are not employees of the United States or an agency thereof. After examining the entire record we conclude that petitioners are employees for purposes of section 911.

Petitioners contend that title 5 U.S.C. section 2105(c) (1982), and Army Regulations 215-2 and 230-2 resolve the issue of whether NAFI personnel are employees for purposes of section 911. We therefore examine section 2105(c) of title 5.

*Section 2105(c) of Title 5*

Section 2105(c) of title 5 defines the term "employee" as follows:

(c) An employee paid from nonappropriated funds of the Army and Air Force Exchange Service, Army and Air Force Motion Picture Service, Navy Ship's Stores Ashore, Navy exchanges, Marine Corps exchanges, Coast Guard exchanges, and other instrumentalities of the United States under the jurisdiction of the armed forces conducted for the comfort, pleasure, contentment, and mental and physical improvement of personnel of the armed forces is deemed not an employee for the purpose of—

(1) laws (other than subchapter IV of chapter 53 and sections 5550 and 7204 of this title [5 U.S.C. secs. 5341 et seq., 5550, 7204 (1982)]) administered by the Office of Personnel Management; or

(2) subchapter I of chapter 81 and section 7902 of this title [5 U.S.C. secs. 8101 et seq. and sec. 7902 (1982)].

This subsection does not affect the status of these nonappropriated fund activities as Federal instrumentalities.

By its terms, section 2105(c) of title 5 is only applicable to NAFI employees. It begins by referring to NAFI personnel as employees paid from NAFI funds. It then carves out statutory exceptions to the term employee by deeming NAFI employees "not an employee" for specified purposes. The phrase "is deemed not an employee" further reinforces our conclusion that it applies to NAFI personnel who are otherwise employees, but are not to be treated as employees for the stated purposes.[6]

We believe that section 2105(c) of title 5 does not alter the status of NAFI employees except as specified. Income tax is not a specified purpose. We hold that section 2105(c) of title 5 does not define the term "employee" for purposes of section 911. Army Regulations 215-2 and 230-2 are similar in language to section 2105(c) of title 5. We further hold that Army Regulations 215-2 and 230-2 do not define the term employee for purposes of section 911.

In the absence of a definition of the term "employee" in chapter 1 of the Internal Revenue Code, we next look to the common law to determine the relationship between NAFIs and NAFI personnel. The determination of whether a taxpayer is an employee is a question of fact. *Professional & Executive Leasing v. Commissioner,* 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988); *Simpson v. Commissioner,* 64 T.C. 974, 984 (1975); *Ellison v. Commissioner,* 55 T.C. 142, 152 (1970); *James v. Commissioner,* 25 T.C. 1296, 1300 (1956); *Hand v. Commissioner,* 16 T.C. 1410, 1414 (1951).

---

[6]NAFI employees are deemed not to be employees of the Federal Government for purposes of laws administered by the Office of Personnel Management, except those laws covering prevailing rate systems (5 U.S.C. secs. 5341 et seq., 5550, 7204 (1982)), compensation for working on Sundays and other overtime work (5 U.S.C. sec. 5550 (1982), and laws barring discrimination (5 U.S.C. sec. 7204 (1982)).

NAFI employees are deemed not to be employees of the United States for purposes of civil service workman's compensation law (5 U.S.C. secs. 8101 et seq. (1982)), and certain Federal safety programs (5 U.S.C. sec. 7902 (1982)).

For all other purposes, NAFI employees are considered to be employees of the United States and an agency thereof.

In determining the existence of a common law employer-employee relationship, "the crucial test lies in the right of control, or lack of it, which the employer may exercise respecting the manner in which the service is to be performed and the means to be employed in its accomplishment, as well as the result to be obtained." *Reed v. Commissioner,* 13 B.T.A 513 (1928), revd. and remanded 34 F.2d 263 (3d Cir. 1929), revd. per curiam 281 U.S. 699 (1930). The *Reed* right-to-control test is still the master test. *Azad v. United States,* 388 F.2d 74, 76 (8th Cir. 1968).

Petitioners do not argue that they are not employees under common law tests. Both Matthews and Davis worked at, for, were supervised by, and were paid salaries by NAFIs. They performed personal services. Their performance of services was controlled by their respective NAFIs. We hold that petitioners are employees of their respective NAFIs under common law tests.

Petitioners argue that the legislative history of the Economic Recovery Tax Act of 1981 includes a reference to teachers which petitioners read to indicate that common law employees were generally intended to be included in the expanded coverage of section 911(b)(1)(B)(ii). We disagree.

The language in question from the Conference report for the Economic Recovery Tax Act of 1981 indicates that Congress intends for section 911 to apply to "teachers at certain schools for U.S. dependents who are not employees of the U.S. or any agency thereof." We do not believe this language generally makes common law employees eligible for section 911,[7] and we hold that it does not extend section 911 coverage to petitioners.

Exemptions and exclusions from taxable income should be construed narrowly, and the taxpayers must bring themselves within the clear scope of the exclusions. *Commissioner v. Jacobson,* 336 U.S. 28 (1949); *Omaha Public Power District v. O'Malley,* 232 F.2d 805, 809 (8th Cir. 1956); *Frederick Smith Enterprise Co. v. Commissioner,* 167 F.2d 356 (6th Cir. 1948); *Graves v. Commissioner,* 89 T.C. 49, 51 (1987). Petitioners bear the burden of proof on this

---

[7]We do not at this time otherwise interpret the phrase referring to teachers at certain schools.

issue. *Welch v. Helvering,* 290 U.S. 111, 115 (1933); Rule 142(a).

Petitioners have failed to bring themselves within the clear scope of the exclusions of section 911(a). Accordingly, we find that petitioners are not entitled to the exclusion of income under section 911(a).

## *Additions to Tax for Negligence*

Respondent determined that petitioners are liable for additions to tax under section 6653(a). Section 6653(a)(1) provides that where any part of an underpayment of income tax is due to negligence or intentional disregard of rules and regulations, an amount equal to 5 percent of the underpayment shall be added to the tax. Section 6653(a)(2) imposes a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. Negligence under section 6653 is defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. *Neely v. Commissioner,* 85 T.C. 934, 937 (1985).

Petitioners have the burden of proving that their underpayment was not due to negligence or an intentional disregard of rules and regulations. *Luman v. Commissioner,* 79 T.C. 846, 860-861 (1982); *Bixby v. Commissioner,* 58 T.C. 757, 791 (1972); Rule 142(a).

Respondent asks us to find that petitioners intentionally disregarded rules and regulations. Alternatively, respondent asserts that petitioners acted unreasonably in their violation of rules and regulations.

Upon review of the record as a whole, we conclude that petitioners believed in good faith that they were entitled to the exclusion under section 911. We further conclude that their position was not clearly untenable. Petitioners made all disclosures of their position required by law and concealed nothing. After asserting eligibility for the foreign earned income exclusion for taxable year 1982, Mr. and Mrs. Davis received their refund before filing their returns for taxable year 1983. In 1985, Mr. and Mrs. Matthews also received a refund for taxable year 1982 after asserting eligibility for the foreign earned income exclusion. These

particular petitioners, as overseas taxpayers not specially trained in tax law, should be entitled to rely on their receipt of the refund as an indication of the Commissioner's administrative decision accepting their position.

We further conclude that petitioners' position presents substantial issues of law and fact such that no negligence addition should be imposed for disagreement with respondent's position. Accordingly, we decline to impose negligence additions in this case.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*