GEORGE B. PARKS and MARNA C. PARKS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Parks v. Commissioner
Docket No. 19843-92
United States Tax Court
T.C. Memo 1994-1; 1994 Tax Ct. Memo LEXIS 4; 67 T.C.M. (CCH) 1911; January 5, 1994, Filed *4 Decision will be entered under Rule 155. George B. Parks, pro se. For respondent: Christian Speck. DINAN
DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was heard pursuant to section 7443A(b) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6659
1986
$   501
$  25
[1]
--
1987
6,754
338
[1]
$ 2,026
The issues for decision are: (1) Whether petitioners are entitled to a charitable deduction in excess of the amount allowed by respondent for a gift of a sailboat; (2) whether petitioners are liable for additions to tax under section 6653(a) for *5 the years 1986 and 1987; (3) whether petitioners are liable for an additions tax under section 6659 for the year 1987; and (4) whether petitioners are liable for the increased rate of interest under section 6621(c) for entering into a tax motivated transaction. Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioners resided in Vacaville, California, on the date the petition was filed in this case. Petitioners timely filed their 1986 and 1987 Federal income tax returns. Petitioner George B. Parks (hereinafter petitioner) was a professor of engineering, physics, and mathematics, at the California Maritime Academy (Academy), a California State college, during the years in issue. In 1973, petitioners purchased a vessel named the Lorelei for $ 22,500. The Lorelei was a 39-foot, 11-inch trimaran, pleasure sailboat built by Eugene Armitage in 1969. Mr. Armitage was not a sailboat builder nor was he in the business of building boats and selling them, but rather was thought to be a master carpenter and Industrial Arts teacher at a junior college in Sacramento. The Lorelei was designed *6 to resemble the Arthur Piver [2] "Victress" trimaran sailboat with a few modifications; the boat is slightly shorter and has a deeper draft. Essentially, the Lorelei was a conventionally designed and built trimaran with "V" bottom floats, a hull and dual masts. It was deckless across the beam with a main cabin extending out to the floats. It had a separate cabin in the central hull, a pilot house between the two cabins with side entrances, and sleeping room for six passengers. It also had a Mercedes 190D diesel inboard engine, electric refrigerators, galley stove and dockside hot water heater, among other appliances. During the time it was owned by petitioners, it was maintained in good condition. The only additions to it, excluding normal maintenance, were the purchases of $ 3,000 worth of additional sails and hatch covers. During 1986, petitioners donated the Lorelei to the California Maritime Academy Foundation, Inc. (Foundation), *7 a non-profit entity founded to support the Academy. On petitioners' 1986 Federal income tax return, they claimed that the fair market value of the donated boat was $ 50,000, of which petitioners deducted $ 30,723.25 and carried the remainder forward to the year 1987. The $ 50,000 value was based on an appraisal of the Lorelei done by Mr. Sparks, an appraiser. Mr. Sparks was never called to testify at trial. Two years later, the Foundation sold the Lorelei to Mark Black. During those two years, the Lorelei was used by the students at the Academy, and apparently abused by the students too. In connection with the sale of the Lorelei to Mr. Black, Mr. Black commissioned an appraisal of the Lorelei by a Mr. Hallander, a marine surveyor. When Mr. Hallander appraised the Lorelei, it was still in good structural condition, but it was in need of numerous minor repairs. Among other problems, the batteries were dead, the electrical systems and the engine were assumed not to be operative, fins were missing, and the bottom needed to be stripped and repainted. Mr. Hallander concluded that the value of the Lorelei "as is" was $ 7,500, and, if the suggested repairs and improvements were *8 made to the Lorelei, the value would be between $ 18,000 and $ 20,000. The Lorelei was eventually sold to Mr. Black for $ 7,500. Early in 1991, respondent made her own study of the Lorelei. Respondent's expert, Mr. Featherston, [3] *9 consulted the BUC [4] Book, the Used Boat Pricing Guide, to determine if boats of the size and design of petitioners' depreciate in value over time. Satisfied that a boat of petitioners' size and design depreciates, Mr. Featherston, using a cost index, adjusted the original 1973 purchase price, $ 22,500 and the 1988 sale price by the Foundation, $ 7,500, to 1986 dollars. Then, by creating a graph using the 1988 sale price after adjustment, $ 7,100, and the 1973 purchase price by petitioners after adjustment, $ 52,000, Mr. Featherston concluded that the fair market value of the Lorelei at the time of the donation was at most $ 18,000. [5] Consequently, in respondent's notice of deficiency, she adjusted the allowance of the donated property to $ 18,000. On September 20, 1991, petitioners filed an amended tax return for the year 1987, and claimed that the property donated in 1986, the Lorelei, was understated and should have been valued at the time of the donation at $ 99,918. At trial, petitioners asserted the boat was worth $ *10 92,160. The first issue for decision is the fair market value of the Lorelei at the time of donation. Section 170 generally allows a deduction for contributions made to or for the use of an organization described in section 170(c) during the taxable year. For purposes here, the amount of the deduction is the fair market value of the property at the time of the donation. Sec. 1.170-1(c)(1), Income Tax Regs.
Fair market value is defined as the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. Sec. 1.170A-1(c)(2), Income Tax Regs. Fair market value is a question of fact and is determined by examining the entire record. Skripak v. Commissioner, 84 T.C. 285, 320 (1985). Petitioners bear the burden to show that respondent's determination is in error. Rule 142; Welch v. Helvering, 290 U.S. 111 (1933). We are not bound by the opinion of any expert witness when that opinion is contrary to our own sound judgment. Chiu v. Commissioner, 84 T.C. 722, 734 (1985). *11 We may accept or reject expert testimony as we find appropriate in our best judgment. Helvering v. National Grocery Co., 304 U.S. 282, 295 (1938). However, in our discretion we may use selected portions of an expert's opinion. Duplicating Supply Company v. Commissioner, T.C. Memo. 1993-451. Petitioners did not introduce expert testimony as to the value of the Lorelei. Instead, petitioner choose to testify to the value of the property. District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, Etc., 534 F.2d 337, 340 (D.C. Cir. 1976). Petitioners contend that the 1986 fair market value of the Lorelei was $ 92,160. Petitioners argue the fair market value of the Lorelei can be readily ascertained by locating comparable vessels -- boats of similar dimension, design, features, and age as the Lorelei -- in the BUC. Respondent disagrees. Respondent's expert, Mr. Featherston, and Mr. Hallander both did not find the BUC book helpful in evaluating the value of the Lorelei. Mr. Featherston stated that the BUC book is only helpful in determining the value of a specific boat. According *12 to Mr. Featherston, a home-manufactured boat, even an expensive home-manufactured boat, cannot be reasonably compared to a commercially-manufactured boat. We agree with respondent on this point. There is no evidence that the vessels petitioner considers comparable to the Lorelei are, in fact, comparable except for petitioner's self-serving testimony, which we are not bound to accept. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). The Lorelei, although arguably an expensive and well-constructed replica of a Victress, is not a Victress. For example, the Lorelei is of unknown quality. All the evidence indicates that the Lorelei, although apparently well constructed, was not of the same quality as a commercially-manufactured boat. The Lorelei's builder does not have an established reputation as does the builder of the Victress. Moreover, we find further support for this position in the BUC itself. In the section of the BUC titled "How To Use This Book", the BUC explains that in order to properly determine the value of a boat, certain necessary information is required, the *13 first of which is the manufacturer's name. See Estate of Bettencourt v. Commissioner, T.C. Memo. 1987-313 (BUC used to determine the value of a listed commercially manufactured boat). Because the Lorelei is a home-manufactured boat and the evidence is that the BUC only is applicable to listed commercially manufactured boats/yachts, we do not find in this case that the BUC is helpful in determining the value of the Lorelei.[6]
*14 We also reject respondent's determination of the fair market value of the Lorelei although not her method of determining fair market value. Mr. Featherston determined the fair market value of the Lorelei based primarily on the 1988 sale price. A subsequent sale price is only evidence of value to the extent it is an arm's-length sale and also to the extent that external factors have not changed the value of the item. Bettencourt v. Commissioner, supra.Here, the Lorelei had significantly deteriorated in the hands of the Foundation since the time it was donated by petitioners in 1986, but Mr. Featherston did not compensate for that fact. According to Mr. Hallander, who appraised the boat in 1988, if the Lorelei were repaired, it would be worth between $ 18,000 and $ 20,000. We find Mr. Hallander's appraisal credible. We conclude that the fair market value of the Lorelei at the time of donation in 1986 was $ 24,000. The second issue for decision is whether petitioners are liable for the section 6653(a)(1)(A) addition to tax for the years 1986 and 1987. Section 6653(a)(1)(A) imposes an addition to the tax equal to 5 percent of the underpayment *15 if any part of the under payment is due to negligence or intentional disregard of the rules or regulations. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed to be correct, and petitioners bear the burden of proving that they were not negligent. Rule 142(a); Matthews v. Commissioner, 92 T.C. 351, 362 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990). Petitioners argue that they were not negligent because they relied on an appraisal done by Mr. Sparks. Good faith reliance on the advice of an expert appraisal may insulate the taxpayer from the imposition of the negligence penalty. Sammons v. Commissioner, 838 F.2d 330 (9th Cir. 1988), affg. T.C. Memo. 1986-318. We do not find such reliance here. Petitioners *16 declined to have Mr. Sparks testify. There is no evidence as to the qualifications of Mr. Sparks. Without sufficient evidence to determine the reasonableness of petitioners' reliance on Mr. Sparks appraisal, we are precluded from finding that petitioners were not negligent. Charlton v. Commissioner, T.C. Memo. 1990-402. The third issue for decision is whether petitioners are liable for the addition to tax under section 6659, [7] which applies to an underpayment attributable to a valuation overstatement. The section does not apply if the underpayment of tax attributable to a valuation overstatement is less than $ 1,000. Sec. 6659(d). A valuation understatement arises on any return where the value on the return is 150 percent or more of the amount determined to be the correct amount of such valuation. Sec. 6659(c); Brigham v. Commissioner, T.C. Memo. 1992-413. This requirement is satisfied because the value of the charitable contribution reported, $ 50,000, is more than 150 percent of the correct valuation, $ 24,000. Therefore, petitioners are liable for the section 6659 addition to tax. *17 The last issue for decision is whether petitioners are liable for the increased rate of interest under section 6621(c) for entering into a tax motivated transaction. Section 6621(c) provides for an increased rate of interest to 120 percent of the applicable rate on underpayments exceeding $ 1,000 attributable to tax-motivated transactions. The term tax-motivated transaction includes any section 6659(c) overvaluation. Sec. 6621(c)(3)(A)(i); Chou v. Commissioner, T.C. Memo. 1990-90, affd. without published opinion 937 F.2d 611 (9th Cir. 1991). We have found that the section 6659 penalty is applicable. Accordingly, petitioners are liable for the increased rate of interest under section 6621(c). Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
2. Arthur Piver is an established and recognized designer of trimaran sailboats.↩
3. Mr. Featherston is a general engineer with the IRS and a graduate of the U.S. Naval Academy with a degree in engineering.↩
4. The BUC lists only the value of commercially manufactured boats/yachts. The parties stipulated that the BUC is an authoritative source for purposes of determining the prices of used pleasure boats/yachts. The BUC is analogous to the Blue Book used to value automobiles.↩
5. A graph of the 1973 and 1988 figures produces a slightly lower value for the Lorelei in 1986 than the $ 18,000 fair market value asserted by Mr. Featherston at trial. In a previous internal report, Mr. Featherston determined that the value of the Lorelei was $ 18,000 by graphing the 1973 and 1988 figures, and an offer of approximately $ 32,000 that petitioners stated they received in the early 1970s. Although the 1970's offer of $ 32,000 was omitted in his report submitted to the Court, Mr. Featherston retained the higher $ 18,000 estimate.↩
6. We also note that in Bettencourt↩, cited by petitioners as support for their position, the Bettencourts purchased their boat in 1969 for $ 18,000 and during the time they owned it they made improvements to it which cost $ 22,000. When it was finally donated in 1981, the parties agreed that the fair market value of the boat was $ 13,100, not including extra equipment. Here, petitioners purchased a home-manufactured boat for $ 22,500 in 1973, made no improvements to it, and then claimed that the boat's fair market value was $ 92,160 in 1986, an increase in value of over 400 percent.
7. The notice of deficiency bases the deficiency for the year 1987 on the original carry over from a value of $ 50,000, not on petitioners' amended return which increased the tax deduction based on a value of $ 99,918.↩