T.C. Memo. 2006-159

UNITED STATES TAX COURT

KEVIN L. AND VICTORIA L. HARGROVE, ET AL.,[1] Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16441-04, 16442-04,    Filed August 8, 2006.
16443-04, 16444-04,
16448-04.

<u>Richard Edward Preston</u> and <u>Alvin S. Brown</u>, for petitioners.

<u>Paul T. Butler</u>, for respondent.

MEMORANDUM OPINION

KROUPA, <u>Judge</u>:  Respondent determined deficiencies in

petitioners' Federal income taxes for 1999, 2000, 2001, and 2002

---

[1]This case is consolidated for briefing and opinion with the
cases of William C. and Deborah L. Kirkpatrick, Docket No. 16442-
04, David J. and Ann M. Nakagawa, Docket No. 16443-04, Robert C.
and Yvonne R. Anthony, Docket No. 16444-04, and Timothy E. and
Mary L. Breeding, Docket No. 16448-04.

(the years at issue)[2] and accuracy-related penalties under section 6662(a).[3]

Respondent determined that petitioners Kevin L. and Victoria L. Hargrove were liable for a $11,814 deficiency and a $2,362.80 accuracy-related penalty for 2000.  For 2001, respondent determined that petitioners Mr. and Mrs. Hargrove were liable for a $8,497 deficiency and a $1,699.40 accuracy-related penalty.

Respondent determined that petitioners William C. and Deborah L. Kirkpatrick were liable for a $1,943 deficiency in 2000 and a $1,843 deficiency in 2001.

Respondent determined that petitioners David J. and Ann M. Nakagawa were liable for a $1,862 deficiency and a $372 accuracy-related penalty for 1999.  For 2000, respondent determined that petitioners Mr. and Mrs. Nakagawa were liable for a $1,848 deficiency and a $370 accuracy-related penalty.  For 2001, respondent determined that petitioners Mr. and Mrs. Nakagawa were liable for a $1,841 deficiency and a $368 accuracy-related penalty.

Respondent determined that petitioners Robert C. and Yvonne R. Anthony were liable for a $2,332 deficiency for 2000, a $2,396 deficiency for 2001, and a $2,158 deficiency for 2002.

---

[2]Not all petitioners had a deficiency for each year at issue.  The term "relevant years" will be used to refer to the years for which respondent determined deficiencies for those particular petitioners.

[3]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Respondent determined that petitioners Timothy E. and Mary L. Breeding were liable for a $13,232 deficiency and a $2,232 accuracy-related penalty for 2000. For 2001, respondent determined that petitioners Mr. and Mrs. Breeding were liable for a $13,482 deficiency and a $2,284 accuracy-related penalty.

After concessions,[4] there are three issues for decision. The first issue is whether petitioners may exclude the costs of lodging provided by their employer from income under section 119. We hold that they may not. The second issue is whether Mr. and Mrs. Hargrove and Mr. and Mrs. Breeding are entitled to exclude certain allowances under section 912. We hold that they are not. The third issue is whether Mr. and Mrs. Hargrove and Mr. and Mrs. Breeding are liable for accuracy-related penalties under section 6662(a). We hold that they are.

## Background

These cases were submitted fully stipulated pursuant to Rule 122, and the facts are so found. The stipulations of facts and the accompanying exhibits are incorporated by this reference. All petitioners resided outside the United States at the times they filed their petitions.

One or both petitioners in each case were employees of TRW Overseas Inc. (TRW) during the relevant years. These petitioners worked for TRW in Pine Gap, Australia, at the Joint Defense Space Research Facility/Joint Defense Space Communication Station (the

---

[4]Respondent concedes that Mr. and Mrs. Nakagawa are not liable for accuracy-related penalties under sec. 6662(a).

defense facility) at the Pine Gap Air Force Base (the base). TRW was a U.S. Government contractor providing services at the defense facility.

Petitioners were required to accept assigned housing as a condition of their employment at the defense facility. The assigned housing was in Alice Springs, Australia, about 22 miles from petitioners' workplace at the defense facility, not within the physical boundaries of the base. Alice Springs was a town of approximately 28,000 people and included residents who did not work at the base as well as those who did. The housing in Alice Springs where petitioners resided was not in a gated community or an area open only to TRW employees. The housing was scattered throughout the city on publicly accessible roads adjacent to homes available to the general public and not within any separate enclave or area.

Petitioners did not pay any rent or utility expenses for their homes in Alice Springs during the years at issue. Local Alice Springs companies provided services such as trash collection and law enforcement. Petitioners never conducted any TRW or defense facility business at their homes in Alice Springs.

Petitioners were required to sign closing agreements as a condition of their employment. In the closing agreements, petitioners identified TRW as their employer and waived any right to elect a foreign earned income exclusion under section 911(a) for the relevant years with respect to the services they would provide for the defense facility in Australia. They also agreed

to attach copies of the closing agreements to their respective returns.  No petitioner attached a copy of his or her closing agreement to the return for any of the relevant years.

Mr. and Mrs. Hargrove did not retain the services of a preparer to assist them in filing their returns for 2000 and 2001.  Mr. and Mrs. Hargrove did not seek advice from any accountant, attorney, or other tax professional with respect to their exclusions of income under sections 912 and 119.  Mr. and Mrs. Hargrove reported they owed tax of $4,719 for 2000 and $4,123 for 2001.[5]

Mr. and Mrs. Breeding filed their original returns for 1998 and 1999 without the assistance of a preparer.  They then retained Bob Ross, a certified public accountant located in California, on the advice of coworkers at the defense facility. Mr. Ross filed amended returns for 1998 and 1999 on behalf of Mr. and Mrs. Breeding excluding income under sections 119 and 912. Mr. and Mrs. Breeding's original returns for 2000 and 2001, prepared with the assistance of Mr. Ross, also excluded income under sections 119 and 912.  Mr. and Mrs. Breeding reported they owed tax of $22,235 for 2000 and $23,169 for 2001.[6]

Respondent disallowed certain deductions and determined that petitioners are not entitled to certain exclusions they claimed

---

[5]This is the sum stated in the deficiency notice.  We note that the parties stipulated that Mr. and Mrs. Hargrove reported amounts slightly different.

[6]This is the sum stated in the deficiency notice.  We note that the parties stipulated that Mr. and Mrs. Breeding reported amounts slightly different.

on their returns for the relevant years in the deficiency notices.[7] Respondent determined that Mr. and Mrs. Hargrove are not entitled to an exclusion under section 911 of $44,850 in 2000 and $31,861 in 2001, determined that the correct amount of tax is $16,533 for 2000 and $12,620 for 2001, and determined that Mr. and Mrs. Hargrove are also liable for the accuracy-related penalty.[8] Respondent determined that Mr. and Mrs. Kirkpatrick are not entitled to an exclusion under section 119 of $6,606 in 2000 and $6,698 in 2001. Respondent determined that Mr. and Mrs. Nakagawa are not entitled to an exclusion under section 119 of $6,607 in 1999, $6,606 in 2000, and $6,698 in 2001 and that Mr. and Mrs. Nakagawa are liable for the accuracy-related penalty. Respondent has since conceded that Mr. and Mrs. Nakagawa are not liable for the accuracy-related penalty. Respondent determined that Mr. and Mrs. Anthony are not entitled to an exclusion under section 119 of $7,056 in 2000 and $7,154 in 2001. Finally, respondent determined that Mr. and Mrs. Breeding are not entitled to exclusions under section 119 of $7,056 in 2000 and $7,154 in 2001, and their exclusions under section 912 of $34,285 in 2000 and $36,357 in 2001. Respondent determined that the correct amount of tax Mr. and Mrs. Breeding owe is $35,467 for 2000 and

---

[7]None of petitioners' returns was introduced as evidence in any of these cases.

[8]In Docket No. 16441-04, Mr. and Mrs. Hargrove asserted in the petition that they were entitled to deductions for housing expenses under sec. 119 and met the requirements for exclusion of certain income under sec. 912.

$36,651 for 2001 and that Mr. and Mrs. Breeding are liable for accuracy-related penalties. Petitioners timely filed petitions.

## Discussion

We are asked to decide whether petitioners may exclude the value of lodging provided by their employer under section 119 and whether certain petitioners are entitled to exclusions from income for certain allowances under section 912. We are also asked to consider whether certain petitioners are liable for accuracy-related penalties. We begin with the burden of proof.

## I. Burden of Proof

In general, the Commissioner's determinations in the deficiency notice are presumed correct, and the taxpayer bears the burden of proving that the Commissioner's determinations are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The burden of proof may shift to the Commissioner under certain circumstances, however, if the taxpayer introduces credible evidence and establishes that he or she substantiated items, maintained required records, and fully cooperated with the Commissioner's reasonable requests. Sec. 7491(a)(2)(A) and (B). Petitioners repeatedly failed to cooperate with respondent to prepare these cases for trial and were admonished by the Court when the case was called for trial. Petitioners have therefore not met the requirements of section 7491(a)(2)(B), and the burden of proof remains with them.

## II.  Exclusion of Lodging Costs

We now consider whether petitioners may exclude the value of lodging provided by their employer from income under section 119. Gross income generally includes all income from whatever source derived, including compensation for services.  Sec. 61(a)(1). Compensation for services includes income realized in any form including money, property, or services.  Sec. 1.61-2(d)(3), Income Tax Regs.

The value of lodging provided to an employee, his or her spouse, and his or her dependents may be excluded from income if certain conditions are met.  Sec. 119.  To exclude the value of lodging, the employee must accept the lodging as a condition of his or her employment, the lodging must be furnished for the convenience of the employer, and the lodging must be on the business premises of the employer.  Sec. 1.119-1(b), Income Tax Regs.  The employee must meet all three of these conditions to qualify for the exclusion.  Dole v. Commissioner, 43 T.C. 697 (1965), affd. per curiam 351 F.2d 308 (1st Cir. 1965).

The parties agree that petitioners were required to accept the lodging as a condition of their employment and the lodging was furnished for the convenience of TRW.  Accordingly, the first two conditions are met.  See sec. 1.119-1(b), Income Tax Regs. The parties dispute, however, whether the lodging is on TRW's business premises.

The business premises of the employer are generally the place of employment of the employee.  See sec. 1.119-1(c)(1),

Income Tax Regs. The phrase "on the business premises" has been construed to mean either (1) living quarters that constitute an integral part of the business property or (2) premises on which the employer carries on some of its business activities. See Dole v. Commissioner, supra at 707.

Living quarters are generally an integral part of business property if they are physically located on the employer's premises. Living quarters are also generally an integral part of business property if the employee does enough work for the employer at the living quarters so that the living quarters are identified with the interests of the business and serve important business functions. See Adams v. United States, 218 Ct. Cl. 322, 585 F.2d 1060, 1066-1067 (1978); Johnson v. Commissioner, T.C. Memo. 1983-479.

The home of a high-ranking executive has been considered an integral part of the employer's business when the executive held meetings and business social functions in his home, raising the status of his company. Adams v. United States, supra. Similarly, a hotel manager's residence has been considered an integral part of the employer's business when the hotel manager could observe the hotel from his home, worked from home in the evenings, and also occasionally entertained important hotel guests in his home. Lindeman v. Commissioner, 60 T.C. 609 (1973).

Conversely, living quarters physically located off the worksite are not integral to the employer's business unless the

employee does significant work for the employer or the employer conducts a significant portion of its business at the living quarters.  See Johnson v. Commissioner, supra.  For example, housing located 12 miles from the employee's worksite on the trans-Alaska pipeline was not integral to the employer's business where the employee only prepared some daily inspection reports at home. Id.  Also, proximity is not the standard.  Living quarters as close as a mile from the worksite are not integral to the employer's business even if the employee is periodically on call to perform work for the employer unless the employee performs significant work for the employer at the living quarters.  See Dole v. Commissioner, supra.

The homes where petitioners and their families lived in Alice Springs were 22 miles from the defense facility.  The housing was in a separate town on a public road in the same areas where nonbase employees lived.  No TRW activities occurred at the housing petitioners occupied in Alice Springs.  No petitioner performed any work for TRW at his or her home in Alice Springs.  Accordingly, the housing in Alice Springs was not an integral part of TRW's business and having petitioners occupy those particular homes served no important TRW business functions.

We conclude that the living quarters TRW provided petitioners were not integral to TRW's business.  The living quarters therefore do not qualify for the exclusion under section 119, and petitioners are not entitled to exclude the costs of their lodging from their income for the relevant years.

Petitioners attempt to redefine their worksite to include the lodging units in Alice Springs by a broad reading of the treaty under which the defense facility was established.[9] We find no merit to their argument. In fact, neither the treaty under which the defense facility was authorized nor its amendments and extensions refers to housing units or lodging for employees.[10] There is no mention of contractors' living quarters and nothing in the treaty implies that contractors' living quarters should be considered part of the defense facility.

III. Exclusion of Living Allowances

We next address the argument of petitioners Mr. and Mrs. Hargrove and Mr. and Mrs. Breeding that they are entitled to exclude certain living allowances for the relevant years under

---

[9]The defense facility was authorized under a treaty between the United States and Australia that became effective on Dec. 9, 1966. Agreement Relating to the Establishment of a Joint Defence Space Research Facility, U.S.-Austl., Dec. 9, 1966, 17 U.S.T. 2235 (the Treaty). The Treaty has been amended and extended since 1966. Exchange of Notes Constituting an Agreement to Further Extend in Force the Agreement Relating to the Establishment of a Joint Defence Facility at Pine Gap of 9 December 1966, as Amended, U.S.-Austl., Jun. 4, 1998, 2171 U.N.T.S. 89; Agreement Amending and Extending the Agreement of Dec. 9, 1966, As Amended and Extended, Relating to the Establishment of a Joint Defence Space Research Facility, U.S.-Austl., Nov. 16, 1988, State Dept. No. 89-2; Agreement Amending and Extending the Agreement of Dec. 9, 1966, U.S.-Austl., Oct. 19, 1977, 29 U.S.T. 2759.

[10]The treaty generally provides for establishing and operating a facility for general defense research in the space field in Australia. Treaty, art. 1. We note that under the treaty, contractors' income shall be deemed not to have been derived in Australia for Australian tax purposes as long as it is not exempt from and is subject to tax in the United States. Id., art. 9(1). If the lodging income were exempt from U.S. tax, this provision would entitle Australia to tax it instead.

section 912. Section 912 excludes from income foreign area allowances and cost of living allowances given to civilian officers and employees of the U.S. Government. Taxpayers must be civilian employees or officers of the U.S. Government to be entitled to the exclusion for the types of allowances under section 912. Sec. 912; Adair v. Commissioner, T.C. Memo. 1995-493.

Mr. and Mrs. Hargrove and Mr. and Mrs. Breeding stipulated that they were employees of TRW, not the U.S. Government, for each relevant year. They each also signed closing agreements identifying TRW as their employer. Moreover, the common law factors defining the employer-employee relationship indicate that TRW, not the U.S. Government, employed petitioners. See Matthews v. Commissioner, 907 F.2d 1173 (D.C. Cir. 1990), affg. 92 T.C. 351 (1989). Mr. and Mrs. Hargrove and Mr. and Mrs. Breeding have not shown that the U.S. Government controlled the methods or manner of their work or had the right to discharge them. See Matthews v. Commissioner, 92 T.C. at 361. Mr. and Mrs. Hargrove and Mr. and Mrs. Breeding are not civilian officers or employees of the U.S. Government and have not shown that they received these types of allowances. Accordingly, they are not entitled to any exclusion from income.

Mr. and Mrs. Hargrove and Mr. and Mrs. Breeding also argue that we should look to the treaty under which the defense facility was established to define the terms "employer" and "employee" because those terms are not defined in sections 119

and 912.  We disagree.  Article 7 of the treaty defines the term "United States civilian employee" for purposes of the treaty and the related Status of Forces Agreement, not for the Internal Revenue Code.  Moreover, "a civilian employee of the United States government employed in Australia in connection with the facility" is not defined in the treaty to include contractors or their employees.  Contractors and their personnel are specifically referred to as such in several other parts of the treaty, such as in paragraph (1) of article 9.

Even if we were to find that petitioners were employees of the U.S. Government, they would still not be entitled to exclude income under section 912 because they have not shown that they meet the other requirements of section 912.  Petitioners introduced no evidence concerning any allowances they received, nor have they shown that they received a cost of living allowance, foreign area allowance under chapter 9 of title I of the Foreign Service Act of 1980, section 4 of the Central Intelligence Agency Act of 1949, as amended, or any other allowance described in section 912.  See sec. 912.

We conclude that Mr. and Mrs. Hargrove and Mr. and Mrs. Breeding are not entitled to exclude any amounts from income under section 912.

IV.  Accuracy-Related Penalty

We next consider whether petitioners Mr. and Mrs. Hargrove and Mr. and Mrs. Breeding are liable for accuracy-related penalties under section 6662(a) for the relevant years.

Respondent has the burden of production under section 7491(c) and must come forward with sufficient evidence that it is appropriate to impose the penalties. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

A taxpayer is liable for an accuracy-related penalty of 20 percent of any part of an underpayment attributable to, among other things, a substantial understatement of income tax.[11] There is a substantial understatement of income tax under section 6662(b)(2) if the amount of the understatement exceeds the greater of either 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6662(a), (b)(1) and (2), (d)(1)(A); sec. 1.6662-4(a), Income Tax Regs.

Respondent has met his burden of production with respect to Mr. and Mrs. Hargrove's and Mr. and Mrs. Breeding's substantial understatements of income tax for the relevant years. Mr. and Mrs. Hargrove reported they owed income tax of $4,719 for 2000 and $4,123 for 2001.[12] Respondent determined that they owed $16,533 for 2000 and $12,620 for 2001. Mr. and Mrs. Hargrove

---

[11]Respondent determined in the alternative that Mr. and Mrs. Hargrove and Mr. and Mrs. Breeding were liable for the accuracy-related penalties for negligence or disregard of rules or regulations under sec. 6662(b)(1) for the relevant years. Because respondent has proven that petitioners substantially understated their income tax for the relevant years, we need not consider whether petitioners were negligent or disregarded rules or regulations.

[12]None of petitioners' returns for the relevant years was introduced in evidence. We have used the amounts reflected in the deficiency notice for the amounts petitioners reported on their returns. We note there is a slight discrepancy between the amounts we use and the amounts that petitioners stipulated, but this difference is immaterial.

understated their tax by $11,814 for 2000 and $8,497 for 2001. Accordingly, Mr. and Mrs. Hargrove have understated their tax for each relevant year by the greater of 10 percent of the tax required to be shown on the return, or $5,000.

Mr. and Mrs. Breeding reported they owed income tax of $22,235 for 2000 and $23,169 for 2001.[13]  Respondent determined that they owed $35,467 for 2000 and $36,651 for 2001.  Mr. and Mrs. Breeding understated their tax by $13,232 for 2000 and $13,482 for 2001.  Accordingly, Mr. and Mrs. Hargrove have understated their tax for each relevant year by the greater of 10 percent of the tax required to be shown on the return, or $5,000.

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment, however, if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion.  Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability and the knowledge and experience of the taxpayer.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The taxpayer bears the burden of proof

---

[13]None of petitioners' returns for the relevant years was introduced in evidence.  We have used the amounts reflected in the deficiency notice for the amounts petitioners reported on their returns.  We note there is a slight discrepancy between the amounts we use and the amounts that petitioners stipulated, but this difference is immaterial.

with respect to reasonable cause.  <u>Higbee v. Commissioner</u>, <u>supra</u> at 446.

Where a taxpayer chooses a competent tax adviser and supplies him or her with all relevant information, it is consistent with ordinary business care and prudence to rely on the adviser's professional judgment as to the taxpayer's tax obligations.  <u>United States v. Boyle</u>, 469 U.S. 241, 250-251 (1985).  The taxpayer must show that the adviser was a competent professional with significant expertise to justify reliance.  <u>Neonatology Associates, P.A. v. Commissioner</u>, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002).

Petitioners failed to assert any arguments that the accuracy-related penalties should not apply.  Petitioners rested instead on their argument that they were eligible for the exclusions from income under sections 119 and 912 that respondent disallowed.  Specifically, petitioners did not argue and did not introduce any evidence that they acted with reasonable cause or in good faith with respect to the underpayments for the relevant years.

Mr. and Mrs. Hargrove did not use a tax return preparer and did not seek advice from a tax professional concerning their returns for the relevant years.  While Mr. and Mrs. Breeding used a tax return preparer to assist with their returns for the relevant years, they did not introduce evidence regarding the preparer.  They have not shown, for example, that the preparer was a competent professional with significant expertise to

justify reliance or that Mr. and Mrs. Breeding provided the preparer all relevant information.  See Neonatology Associates, P.A. v. Commissioner, supra.  We therefore do not find that Mr. and Mrs. Breeding have shown that it was reasonable to rely on this tax return preparer.

After considering all of the facts and circumstances, we find that Mr. and Mrs. Hargrove and Mr. and Mrs. Breeding have failed to establish that they had reasonable cause and acted in good faith with respect to their respective underpayments. Accordingly, we sustain respondent's determination as to Mr. and Mrs. Hargrove and Mr. and Mrs. Breeding for the accuracy-related penalties for the relevant years.

We have considered all remaining arguments the parties made and, to the extent not addressed, we conclude they are irrelevant, moot, or meritless.

To reflect the foregoing and the concessions of the parties,

Decisions will be entered for respondent in Docket Nos. 16441-04, 16442-04, 16444-04, and 16448-04.  Decision will be entered for respondent in Docket No. 16443-04 with respect to the deficiencies and for petitioners with respect to the section 6662(a) penalties.